McCULLOCH (DEBUTTS v.). See Case No. 3,718.

———

## Case No. 8,737.

### M'CULLOCH v. GIRARD.

[4 Wash. C. C. 289.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1822.

CONTRACTS — WRITTEN INSTRUMENT — WHETHER WHOLE OR PART OF CONTRACT—PAROL EVIDENCE TO VARY—STATUTE OF FRAUDS.

1. Explanation of the rule that parol evidence shall not be given to explain or vary the written contract.

2. The question is, is this written instrument the contract, or merely a part performance of the parol agreement. It has elsewhere been decided, that in cases not within the statute of frauds, evidence may be given to contradict a written simple contract, by showing that the whole of it was not reduced to writing. It may be well doubted, nevertheless, whether the safest rule is not to apply the policy and reason of the statute of frauds to all cases of written contracts.

[Cited in Astor v. Girard. Case No. 595; The Alida, Id. 200; Page v. Sheffield, Id. 10,667.]

[Cited in Barker v. Bradley, 42 N. Y. 320.]

This was an action to recover the quarter interest payable the 1st of October, 1816, on $125,000, six per cent. funded stock of the [Bank of the] United States, with interest from the 2d of October, 1816, when it was received by the defendant. The declaration contained two counts, one upon a special agreement, which was fully proved by Mr. Jones, and the other for money had and received to plaintiff's use.

Mr. Jones, who was one of the five commissioners for receiving subscriptions to the Bank of the United States in Philadelphia, was examined as a witness, who stated, that he, after the 20th of July, 1816 (when, as it afterwards appeared by a return of the commissioners from other parts of the United States, that the twenty-eight millions to be subscribed by individuals had not been taken, by about thirty thousand shares), was authorized by sundry persons to subscribe for them to the amount of about ten thousand shares, including the plaintiff; for whom, and his associates, he was to subscribe for five thousand shares, being furnished by the plaintiff with the specie and certificates, accompanied by a power of attorney, to pay the first instalment. The specie part, $25,000, he deposited in the bank of the defendant. The power of attorney was to himself, to transfer the stock, $125,000, to the commissioners. That after divers conversations

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

with the defendant, a verbal agreement was entered into between the defendant and the witness, as the agent of the plaintiff and others, previous to the 27th of August, 1816, on which day a final arrangement was made in writing, and which was given in execution of the agreement. The paper alluded to was as follows: "For value received, I promise to transfer to J. W. M'Culloch or order five thousand shares of the Bank of the United States, on which the first instalment has been paid, as soon as the books for that purpose shall be opened by the said bank." Signed by the defendant. The whole of this paper is printed, except the date, the name of the person to whom the transfer was to be made, the number of shares and the signature.

The counsel for the defendant objected to any evidence being given by the witness of a parol agreement with the defendant variant from the above instrument, which they contended was the final agreement between the parties. They cited 1 Phil. Ev 494, 496; 3 Camp. 426; [Grant v. Naylor] 4 Cranch [8 U. S.] 229; 12 East, 6; 3 Wils. 275; 4 Brown, Ch. 515.

On the other side, it was contended that the paper of the 27th of August was not the agreement, but was merely intended as a part performance of the parol agreement, so far as it could be performed, until the books of the bank should be opened for making transfers.

Chauncey & Sergeant, for plaintiff.

Mr. Binney and J. R. Ingersoll, for defendant.

WASHINGTON, Circuit Justice. We admit the general rule of law, that parol evidence to vary or explain a written contract, except in the case of a latent ambiguity, is inadmissible. But the question is, whether the paper which has been given in evidence be the contract between these parties, or was given merely as a certificate of the number of shares to which the plaintiff was entitled under the parol contract, and in part performance of that agreement, so far as it could be performed before the bank was organized, and had opened its books for transfers? The court is of opinion, in the present stage of the cause, that the instrument under consideration was given for the purpose of executing the parol agreement as far as it could then be executed; and that if it should turn not that it formed a part of that agreement, that such a paper should be given, or that a paper of that description was, in the ordinary course of the defendant's business, in respect to transactions of this nature, given by him; evidence of the parol contract will be proper, and will not violate any of the rules of law upon this subject.

The witness then proceeded to state that, having ascertained in his conversations with the defendant that he intended to take the

unsubscribed shares, he informed the defendant that he was authorized to subscribe five thousand shares in the name of the plaintiff, and also for other persons, whom he named, a certain number for each, and that he had a right, and intended to do so. But not wishing that any collision should take place between the commissioners (the defendant being one), he was willing not to exercise his right, if the defendant would engage that the plaintiff, and the other persons by whom he was employed, should participate with the defendant in his subscription, to the extent of the shares he was authorized to subscribe for them severally, and stand in all respects in the same situation as they would stand in case they were actually subscribers. To this proposition the defendant assented, in consequence of which the witness did not subscribe for those persons, but immediately gave them notice of the arrangement he had made with the defendant. The witness, at the same time, informed the defendant that he was provided with the specie and certificates of funded stock to pay the first instalment on the number of shares which he was empowered to subscribe. On the 26th of August he gave the defendant a check for the $25,000 specie, lying in his bank, the specie instalment for the five thousand shares for the plaintiff; and, in consequence of the arrangement made with the defendant, he returned to the plaintiff the power of attorney for transferring the $125,000 of funded stock to the commissioners, that another might be forwarded to the witness to transfer that stock to the defendant. This he received soon after, which, as also the certificates, he delivered to the defendant. On the 26th of August the defendant took the unsubscribed shares. On the 27th of August he delivered the above instrument of that date to the witness. The witness understood from the plaintiff that Mr. Donnell of Baltimore, and some others, were concerned with him in the five thousand shares, but to what extent he knew not. The stock transferred to the defendant stood in Mr. Donnell's name, and was accompanied by a power from him to transfer it. But the certificates and power were put into his hands by the plaintiff, and he knew no other person in the transaction but the plaintiff. When the contract was made with the defendant, he did not contemplate the subject of the present controversy.

It appeared by the books of the loan office, that the $125,000 of six per cent. funded stock delivered to the defendant by the plaintiff, were transferred to the defendant on the 16th of September, the day before the books closed for that quarter; and that, on the 2d of October, the interest on that stock being $1875, for the quarter due on the 1st, was paid to the defendant. It also appeared by the books of the commissioners of the bank, that on the 5th of November 1816, the day after the board was organized, certain resolutions were introduced by Mr. Sergeant, asserting a right to all the interest due the 1st of October on the funded stock transferred to the commissioners, and providing that no transfers of shares in the bank should be permitted by any subscriber, until that interest was paid to the bank. On the 7th of that month the board agreed to reconsider these resolutions, and the same were referred to a committee, who, on the 25th of the same month, reported a substitute, which was rejected, and Mr. Sergeant's resolutions were then rescinded. It was further proved, that, on the 29th of November, immediately or soon after the books were opened, the defendant transferred five thousand shares to the plaintiff, who, on the same day, transferred four thousand five hundred of them to other persons, amongst whom was Mr. Donnell. The defendant also produced a book belonging to the defendant, containing a number of printed promissory notes, similar to that given to the plaintiff on the 27th of August, of which a certain number had been filled up, and having been complied with, had been returned to the defendant. The material parts of the arguments of the counsel are noticed in the charge.

WASHINGTON, Circuit Justice (charging jury). Great talents and ingenuity have been displayed by the learned counsel on both sides, in the argument of this cause. But after all, it lies within a very narrow compass; the only question as to which any difficulty is perceived by the court, being, what was the real contract between these parties? Or, to render it more intelligible, which was the contract between them?— the parol agreement, as proved by Mr. Jones, or the promise contained in the paper of the 27th of August? When the objection was made to the introduction of evidence, to prove the parol agreement, the court could have but an imperfect glimpse of the question to be decided, the terms of that contract being, at that stage of the cause, unknown to the court. But as far as the case had been disclosed, we thought the evidence ought to be admitted; and in coming to this conclusion, we were in no small degree influenced by the form and character of the instrument which, by the defendant's counsel, has been considered as the real contract between these parties; but which seemed to us to be rather intended to give effect to the parol agreement, so far as it could be available for that purpose before the bank was organized, and the books were opened; than as reducing the parol contract to writing. The court was nevertheless of opinion that such evidence would, generally speaking, be improper, unless it should appear that the parties had agreed that a written contract should be given as evidence in part, or in part performance of the parol agreement; or unless it was to be given by some usage or prac-

tice, either general or special, in relation to the party giving the promise, so as to be at least evidence of such an agreement, or that such was the understanding of the parties. I know that it has been elsewhere decided, and that too by very learned judges, that, in cases not within the statutes of frauds, evidence may be given to contradict a written simple contract, by showing that the whole of it was not reduced to writing. It may be well doubted, nevertheless, whether the safest rule is not to apply the policy and reason of the statute of frauds to all cases of written contracts. Without, however, giving any opinion on this point, we are clearly of opinion that, under the restrictions laid down by the court in admitting the parol evidence in this case, the rule is a safe one. The parol agreement having been fully laid before the jury, together with other circumstances which attended it, it is for them to decide, whether the paper of the 27th of August contains the real contract between the parties on that day, or whether it was merely intended to give effect to the parol contract, as far as it could be done prior to the opening of the books of the bank to receive transfers? When this question is settled, there can be no difficulty in deciding whether the contract has been broken or not. To prove that the parties could not have intended to change the terms of the parol agreement by reducing it to the mere form of a promise to transfer so many shares, the character in which Mr. Jones acted, and the nature of his authority, have been strongly pressed by the plaintiff's counsel upon the attention of the jury. He was a mere agent, authorized to subscribe for the plaintiff five thousand shares, and was furnished with the means to make good the subscription. Strictly speaking, he was bound to comply literally with his instructions by subscribing. But supposing that the contract with the defendant was a substantial compliance with his authority, and most undoubtedly it was, if fulfilled; he forbore to exercise his right of subscribing for the plaintiff in consequence of the solemn assurances of the defendant that, if he would so act, the plaintiff should participate in the defendant's subscription to the extent of five thousand shares, and stand in the same situation as if he had actually subscribed. Of this contract Mr. Jones gave immediate notice to the plaintiff, with which, it would seem, he was satisfied. Now the argument founded on these facts is, that after a substantial performance of his instructions, and that communicated to his constituents, it is against all probability that Mr. Jones would enter into a new and different agreement; or that he and the defendant should so have intended.

Another argument of still more weight is drawn from the character and form of the instrument of the 27th of August. The whole of it is printed except the date, name of transferee, number of shares, and the

signature. No blank is left in which five words of a special contract could be inserted. This is not the case with printed forms of conveyances, charter parties, policies of insurance, and other instruments intended to admit the introduction of special contracts, for which sufficient blank spaces are always left: and so purely formal are the printed parts of a policy of insurance considered, that if there be any discrepancy between them and the written parts, the latter is always considered as containing the real contract of the parties. The form of the paper under consideration was strictly adapted to a sale by the defendant of his shares, previous to the opening of the books of the bank; and yet we find that it was made use of as evidence of the number of shares to be transferred, in cases where no sales were made, but where a special contract subsisted. It also appears that the defendant kept a book of these printed documents, with a duplicate of each, many of which had been issued, and being fulfilled, were returned to the defendant, and deposited in the book. From these circumstances, it would seem that these instruments were considered as merely formal; used by the defendant as such in the ordinary course of his business, in negotiations of this kind. The conclusion drawn by the plaintiff's counsel from these facts and circumstances is, that the paper of the 27th of August was understood by the parties as evidence merely of the number of shares which were to be transferred under the parol contract, and not as evidence of the contract itself.

On the part of the defendant, it has been contended, that since the parties, at the time the contract was entered into, did not contemplate the subject of interest to become due on the first of October, but must, in common with others, have considered that as belonging to the bank (as no doubt it did;) and as a relinquishment of her right to such interest could not have been expected, the parties had no motive to adhere to the strict letter of the parol agreement, the written contract embracing every object which could by the parties have been deemed material, or worth incorporating into it; that the premature transfer to the defendant by the plaintiff, of the funded stock, on the 16th of September, which he need not have made until the bank was organized, and his acceptance of a transfer of the bank shares on the 29th of November, and delivering up the defendant's engagement of the 27th of August, prove that the whole contract was considered as fully satisfied, those acts amounting to a waiver of the parol agreement, even if it was not absorbed and extinguished by the written contract. To all this it is answered, that the circumstances relied upon prove nothing in relation to the question, which was the real contract between the parties? for if the parties did not contemplate any casual or unexpected consequences

to grow out of the precise terms of the parol contract, and had therefore no motive to adhere to that contract, they were equally without a motive to change or to waive it, and therefore it was left unaffected by the written contract. That, whether the one contract or the other was considered as the subsisting one, still the transfer of the stock to the defendant, and of the bank shares to the plaintiff, were necessary acts to be performed in fulfillment of either of them; and that as to the time when the former act was performed, it was quite unimportant to the plaintiff; since if the parol contract was regarded by the parties as the subsisting one, then the October interest would be received by the defendant as trustee for the plaintiff, and for his use.

After this examination of the arguments of the counsel on each side, we return to the question, which was the real contract between the parties? If the written one, then it is admitted that it was fulfilled according to its terms. If the parol agreement, then the question will be, has that been fulfilled? To enable you to give an answer to this question, you will have to inquire what would have been the rights of the plaintiff in relation to the subject in controversy, if on the 26th of August Mr. Jones had subscribed for five thousand shares in the name of the plaintiff; since, by the agreement with the defendant, he was to stand precisely in the same predicament as if he had subscribed those shares. The plaintiff contends that he would have been entitled to the October interest. The defendant's counsel deny this, and insist that the bank was, and still is, entitled to that interest, and that, having never relinquished her right, she may yet recover it from the subscribers. That if the bank is not entitled, then the interest belongs to Mr. Donnell, who was the owner of the stock paid on account of the first instalment. Let us examine these pretensions. And first, as to that set up for the bank. We have no doubt but that the bank had at least an equitable right to the October interest on all the stock which constituted the first instalment, although the transfer to the bank was not, and could not be made previous to its being organized. It stood, nevertheless, to the credit of the owner of the stock on the 1st of October, to whom it was legally payable. But whatever her rights were, they were perfectly known to the board. Her claim was asserted by Mr. Sergeant's resolutions, as well as by a reference of them to a committee, and were finally retracted and given up by the resolution of the 25th of November, rescinding Mr. Sergeant's resolutions. The October interest having been received by the subscribers, the bank has acquiesced from that time to the present, and the question is, whether, if the bank were now the plaintiff, she could, under all the circumstances of the case, and the absence of every pretence of fraud, ignorance, or mistake, maintain the action? We think she could not. As to the right set up for Mr. Donnell, it stands upon ground still less tenable. In the contract between the plaintiff and the defendant, he was no party, and was altogether unknown. The plaintiff was to transfer to the defendant $125,000 of stock, and to the latter it is quite immaterial whose stock he transferred. He had certificates of stock in the name of Donnell, with a regular power to transfer it, and he did accordingly transfer it to the defendant, who thus became the legal owner of the stock. The plaintiff therefore treated this stock as his own, and was possessed of all the power of an owner of it, under an authority derived from Mr. Donnell, who, during more than six years, has never asserted a right to the interest received by the defendant. To whom then can the defendant be liable for that interest, if liable at all, but to the plaintiff? If indeed he is not entitled to retain the money after he shall have received it from the defendant, in consequence of some agreement between him and Donnell, that is a matter between them with which the defendant has nothing to do. There is not a possibility of his being twice called upon for the sum in dispute. The question then is, what are the plaintiff's rights under the parol contract, should you be of opinion that that is the real subsisting contract between the parties? The answer is a plain one. To the interest due on the 1st of October, which was received by the defendant, with interest from the time of the receipt.

The jury found accordingly.