NICHOLAS I. ROSEVELT appellant,
*against*
DALE & WIFE, Executors of ROBERT FULTON, respondents.

Where F. purchased of R. a tract of land on the bank of the Ohio river, R. representing and believing, that it contained a valuable coal mine; and, besides paying to R. $4400, F. covenanted to pay him an annuity of $1000 for 20 years ; which annuity was to cease, if after the mine was faithfully worked by F., it should not yield a certain quantity of coal, and the land was accordingly conveyed by R. to F. ; it turning out, in fact, that there was not such a coal mine as was represented by R. ; a perpetual injunction was granted to restrain R. from prosecuting at law for the annuity, though it did not appear that R. had been guilty of fraud.

*Held,* also, that as there was no such coal mine in the land, as was represented, F. need not work the mine in order to determine the quantity of coal.

Relief can be had in equity against any deed, or contract in writing, founded in mistake:

And this, whether the mistake is set up affirmatively, by bill, or as a defence:

And the mistake may be shown by parol proof.

APPEAL from the Court of Chancery. All the material parts of the pleadings and proofs are stated in the opinions of the Judges; and see, also, 5 John. Ch. Rep. 174, S. C., where the pleadings and the proofs, considered material by the Chancellor in the Court below, are stated together with the decree appealed from, and the reasons of that decree.

*Rosevelt,* for the appellant said the whole case resolved itself into a question of fact upon which the Chancellor should have awarded an issue. Here was neither fraud nor mistake. The evidence afforded no pretence for the former, and if it gave countenance to the latter, or even established a mistake beyond all doubt, this could not avail the respondent. The contract was executed, and could not be se aside without affirmative evidence of fraud. And he went into a full examination of the evidence in reference to the

two questions of fraud and mistake ; and to show also that the Chancellor erred in supposing there was not, in fact, a valuable coal mine in existence as supposed by the parties ; that though the mine might lie principally in the river, yet being above tide water, it was no less the subject of private ownership ; and might have been worked to advantage at certain seasons of the year, as the testator of the respondents had agreed, in order to determine its extent and value.

To show that the proprietor of the bank above tide water owns *usque filum aquæ*, he cited Harg. Law Tracts, 5 ; *Palmer* v. *Mulligan*, (3 Caines' Rep. 319 ;) *Adams* v. *Pease and another*, (2 Con. Rep. N. S. 484 ;) *The People* v. *Platt*, (17 John. 210 ;) *Hooker* v. *Cummings*, (20 id. 99.)

At any rate, the Chancellor should have awarded an issue to try the questions of fraud and mistake.

*M. Van Buren*, for the respondent said that Fulton's inducement to purchase, was the supposition that the land contained a valuable coal mine. This was presented by Rosevelt in the most imposing point of view. He examined the evidence, and contended that Fulton had been misled by Rosevelt's representations ; and whether this was actual moral fraud, arising from a knowledge that the history which he gave was untrue, or a mistake, it was the same thing in its effect upon the contract. (1 Madd. Ch. 208, and the cases there cited.)

If a man will represent a state of things as within his knowledge, and thereby draws another into a contract, the latter ought not to be holden, if the representation be untrue.

Coal did not exist in the bank to any extent worth naming. If there was a mine, it was in the bed of the river. But it is said the Ohio is private property. This we deny. It is a public highway ; and there are several acts of Congress establishing ports of entry upon it in different places.

It was doubtless competent for the Chancellor to have awarded an issue, had he thought it necessary ; but this is a matter of discretion, like referring a question of law to

the Judges. In only two cases, is he peremptorily required to award an issue. These are upon a question of *devisavit vel non* and adultery ; the former at common law ; the latter by statute. Even in these cases, he may disregard the verdict, or send it to another jury, if he is dissatisfied with the decision of the first. But the appellant did not ask the Chancellor for an issue.

Again, if the cause go to an issue, it must be determined as before the Chancellor, by written depositions of foreign witnesses, taken by commissioners. The object of an issue is to have the benefit of an oral examination of witnesses.

*S. Jones,* in reply. This agreement is as deliberate an act as the parties can do in the law ; and from which they ought not to be released, unless some substantial cause is shown in the clearest manner. One part of the agreement is to pay the annuity, provided a coal mine is found yielding a given value. There is a special provision as to the mode of testing this fact. This we ask the respondents to follow up, and we will submit peaceably if the result is against us.

The contract has been in part executed, by a conveyance of the land. We have done all which was necessary, on our part, to execute the contract. We are not seeking to enforce any demand, but were proceeding at law to enforce the contract against Fulton's representatives, when we were arrested by an injunction. Is an executed contract to be set aside because there may be scruples about its equity ? Had we come to enforce an executory contract, an appearance of unconscientiousness might have driven us to law ; but there is a wide difference between coming to compel the execution of a contract, and to rescind one which is already executed. It is an axiom, that you cannot set aside the latter unless fraud is clearly shown. This rule is so well known and established, that I should be ashamed to cite authorities in its support. It comports with the plainest rules of common sense, and need only be stated to be acknowledged. There is no pretence for alleging fraud in this case,

and even if a mistaken representation be sufficient for the respondents, none is established. [Here he examined the evidence as to these points, and contended that Rosevelt's representations were shown to be substantially correct.]

The rule in relation to awarding an issue, as established by the later cases in England, is, that whenever the Chancellor finds there is a material question of fact, about which the witnesses differ, he will always award an issue.

Suit at law.    WOODWORTH, J. The appellant commenced an action in the Supreme Court, against the respondents, to recover the consideration stipulated to be paid for a title to certain lands in the state of Indiana. The contract contains two distinct covenants : the one for the payment of $4400, for the title—the other for the payment of an annuity of $1000, for a coal mine supposed to be on the premises.

Prayer of bill.    The bill prays that the appellant may be compelled to surrender the agreement to be cancelled, that it may be declared null and void, as having been obtained by deceit and fraud, and for an injunction to restrain the respondents from proceeding in a suit at law, and for general relief.

In does not appear from the case, whether an injunction was granted in the action for the purchase money ; but in the appellant's points it is stated, that an injunction was issued by one of the Masters in Chancery, and not dissolved by the Chancellor. In the decree no notice is taken of the suit at law. It directs that the appellant be perpetually enjoined from suing or prosecuting any action or suit at law, for the recovery of the annuity, or any part thereof.

Decree

There is nothing in the decree relating to the $4400 ; and, for aught that appears, there is no impediment in the way of a recovery to that extent. This, I presume, is the cause why the Chancellor does not vacate the contract, but applies the powers of the Court to operate upon the annuity only. In this view, it was proper to leave the title to the land in the representatives of Fulton.

The point.    The question then is, whether the contract respecting the annuity was entered into on the part of Fulton, in conse-

quence of representations, which were either fraudulent or untrue, in point of fact, and founded on mistake.

As it is very evident the inducement of Fulton to contract was a belief in the existence of a valuable coal mine, if it shall appear that he relied on a state of facts disclosed by the appellant, which are found to be untrue, I apprehend it is not material whether the intent was fraudulent, or the representation proceeded from misapprehension or mistake. On the argument, I understood the counsel to say that the contract being executed, it could not be set aside unless for fraud. It will be conceded, that every kind of a mistake is not relievable in equity ; as where the fact, from its nature, was doubtful, or at the time of the agreement equally unknown to both parties : but they are relievable where there is express evidence of the intention of the parties. Thus, in *Gee* v. *Spencer*, (1 Vern. 32,) a release was set aside by reason of the misapprehension of the party. (18 Vin. 370. *Mildmay* v. *Hungerford*, 2 Vern. 243. 1 Fon. 106.)

In *Gillespie* v. *Moon*, (2 John. Ch. 596,) the Chancellor observes, " I have looked into most, if not all of the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing, founded in mistake or fraud. The mistake may be shown by parol proof, and relief granted to the injured party, whether he sets up the mistake affirmatively, by bill, or as a defence." Also, in *Bingham* v. *Bingham*, (1 Ves. 127,) an agreement was made for the sale of an estate. The plaintiff was relieved on the ground of mistake. It was held, that although no fraud appeared, and the defendant apprehended he had a right, yet there was a plain mistake, such as the Court was warranted to relieve against, and not suffer the defendant to run away with the money, in consideration of the sale of an estate to which he had no right. It may be laid down as a general proposition, that to rectify mistakes is the peculiar province of a Court of Chancery. (1 Ves. Jun. 445.) Indeed, a contrary doctrine would strike at the root of fair dealing, if the party making a false representation might allege it was not done fraudulently. To

VOL. II.                 18

*Margin notes:*
ALBANY,
Dec. 1823.

Rosevelt
v.
Fulton.

Intent need not be fraudulent.
Mistake will set aside agreement.

This may be shown by parol.

Rosevelt
v.
Fulton.

The contract
and evidence.

Obligation to
arbitrate inap-
plicable.

Description
which led to
contract.

Fulton it was immaterial whether the appellant acted fraud‑ ulently or not—the injury to him is in either case the same. It is enough that he put confidence in the statement, and relying on its truth, consented to be bound.

[The contract recites, that the appellant did discover a coal mine, on the bank of the Ohio river, which is embraced within a tract of land, particularly described, containing 1040 acres. It prescribes the manner in which Fulton was to be relieved from the payment of the annuity, should the mine become exhausted, after faithfully and scientifically working the same, according to the plan and manner of work‑ ing coal mines in Europe. In the argument it was con‑ tended, that relief must be sought under this provision. The answer to the objection is, that the clause has reference to a different state of facts. It takes for granted, that the con‑ tract cannot be invalidated by reason of a fraud, or any oth‑ er equitable ground, existing at the time of its inception. It does not relate to a deficiency of coal, at the commence‑ ment of the operations, but is intended to guard and protect the party against a future failure. That contingency has not happened. The respondents say, " We are not bound to in‑ cur great and unnecessary expense in working the mine, without the prospect of remuneration. We are absolved from this, inasmuch as there is no coal mine on the bank of the river, answering the description given by the appellant." If this be true, it must be evident that the clause relied on has nothing to do with the question now before the Court. The respondents seek relief on distinct grounds of equity. They allege that they have been deceived, and drawn in to make the contract, by false representations. If they have succeed‑ ed in this respect, the contract must necessarily fall, so far as regards the annuity. The cause then resolves itself into a question of fact—Is there a coal mine on the bank of the river, within the boundaries of the land as described ? and if so, was it fairly and truly represented in the appellant's letter of the 23d Nov. 1813 ?

The description is certainly given in glowing colors. I think a purchaser would not be considered very sanguine, in believ‑ ing the acquisition to be a mine of wealth. The appellant

Rosevelt
v.
Fulton.

says, " When I first discovered the mine, after removing a few inches of earth, I did, with the aid of a hatchet, and a few wooden wedges, break or split off squares of coal as large as two men could handle." He threw into his boat a few chaldrons. At Natchez he sold 30 or 40 bushels that remained. In his second descent he had no occasion to take coal out of the mine, as he found, already raised, many thousands of bushels, ready to be carried off by flats, some of which were then on the spot. At New Orleans he found several flats, loaded with coal for sale, which he ascertained to have come from the same mine; that the coal, when the water was up, is overflowed, as all the bottom lands are on the margin of the Ohio ; but by wheeling it a few yards out of the mine, it may be put on high grounds, accessible at all stages of the water. If this description is not substantially supported, it would be iniquitous to compel the respondents to pay the consideration. I think this presents a case in which, if there was no mistake or fraud, there would be no difficulty in obtaining proof. A coal mine so accessible, so productive, in the midst of inhabitants, cannot be an obscure object. Its existence is susceptible of the most satisfactory proof. Numbers must have been employed in raising the immense quantities of coal stated to have been found on the surface, as well as many persons to transport it, as an article of commerce. Something more than scanty proof of a coal mine, bearing a resemblance to the original, is justly expected. The fact, alone, that conclusive proof is not exhibited, is, in the absence of explanation, a circumstance unfavorable to the the appellant's claim, and attaches suspicion on the original representation. The respondent's witnesses are acquainted with the Ohio river, 30 or 40 miles above Anderson's Creek. They speak of but one coal mine.

*If a mine, it was easy to prove it.*

James McDonald, Jun., says he is acquainted with the tract of land mentioned—he lives five miles from it—that there is a bank of coal in the bed of the river—in some seasons it is covered throughout the year with water; and is always covered, except in very low water—the water rises from 35 to 40 feet—the coal mine could not be worked, but at very great expense.

*Proof.
M'Donald's evidence*

ALBANY,
Dec. 1823.
───────
Roosevelt
v.
Fulton.

John Bristow lives near the land. His testimony, in substance, concurs with that of McDonald.

It is scarcely credible, if there had been a valuable coal mine on the bank, it should be unknown to these witnesses; both of whom have assisted in raising coal from the bed of the river.

Rector's evidence.

Elias Rector, a witness for the appellant, says he went down the river in 1809. He believes there is a coal mine there—that he and the appellant, with other men, did take out of the mine some of the coal—that the coal was not found in the bed of the river, nor was it a deposit. Nothing is said about the quantity of coal taken, or with what ease it was obtained. The smallest quantity would satisfy the words of the deposition. Why not support the description of the appellant, if it could be done consistently with truth? It is very clear to my mind, that the representation given by Rector would not have been deemed satisfactory to Fulton, or any other purchaser. It has but little resemblance to the letter of the appellant.

White's evidence.

Thomas C. White, another witness for the appellant, says he has been in the state of Indiana, and knows the land—he has passed over it twice in travelling, for the purpose of viewing the tracts, at the request of the appellant—he discovered a bed of coal, on which men were at work—it appeared to extend, on the surface of the bank, for about 30 or 40 yards—it was evident it constituted a part of the land—he cannot say how much coal may be produced from the land, but from the circumstance of there being much coal in the neighborhood, and from the appearance and extent of the bed, he supposed it would yield a great quantity.

From the statement of this witness, I think it may be inferred, that he was not a resident. He merely says, he has been in Indiana, and was sent by the appellant to view the tract. The question again forcibly returns, why not examine some of the persons who had worked the mine, and who knew something about the large quantity of coal that had been sent down the river? It can scarcely be presumed they had all disappeared. White, indeed, says he was told that a steam-boat had been seen at the bank, taking coal on board.

which had been dug and placed on the bank; but this is hearsay, and no evidence.

I do not consider Latrobe's testimony material, as to the representations upon which the contract was made. He says that Fulton intimated, that possibly the situation of the mine might be such as to render it impracticable to work it, except when the waters of the Ohio were low. The witness suggested that shafts might be sunk at some distance from the river, to obviate the difficulty. Admitting that Fulton was apprised of the great rise of the river, the material inquiry is, was the mine on the bank, and if so, does the proof warrant the description given by the appellant? I think it does not. In my opinion, the testimony of the respondents greatly preponderates, and fully supports the Chancellor's decree.

Some suggestions were made as to awarding an issue to try the fact I have been considering. Wherever there are doubts regarding facts, an issue is proper; but the Chancellor has a right to take upon himself the decision of every fact put in issue upon the record. The propriety of an order for an issue, is a question depending on the nature and force of the testimony. Where, from the nature of the question, or from the testimony already given, it appears that farther light may be obtained, it would be proper to require further proof; but if the evidence be satisfactory, or decisive in favor of either party, the rights of such party ought not again to be hazarded before another tribunal. (1 Mad. 365. 1 John. Cas. 500.)

I am of opinion, that the decree of the Chancellor be affirmed.

SUTHERLAND, J. concurred.

BOWKER, BOWNE, BRONSON, CLARK, DUDLEY, EARLL, GREEN, HATHAWAY, HUNTER, KING, LEFFERTS, MALLORY, M'INTYRE, OGDEN, REDFIELD, STRANHAM, and THORN, *Senators*, concurred.

SAVAGE, Ch. Justice, (after stating the testimony of the witnesses.) I cannot view this transaction in the same light with the late Chancellor. If there ever was a fraudulent in-

*Margin notes:*
ALBANY, Dec. 1823.

Rosevelt v. Fulton.

Latrobe's evidence.

When issue to be awarded.

No evidence of fraud.

The result of the proof stated.

Rosevelt
v.
Fulton.

tent in the mind of the appellant, at what time did it origi-
nate?   In 1809, he first discovered what he supposed to be
an extensive bed of coal; he, with Rector, purchased the
land: in 1811, he became the owner of the whole, and ex-
pressed an intention of working the mine.   At this time,
Fulton knew nothing of it: two years elapsed before he
had any knowledge of its existence; and when the fact
was communicated to him, there was no offer to sell; nor
does it appear that such an offer was ever made, until he ap-
plied to make the purchase.   When this application was
made, the appellant freely communicated in writing the facts
which induced him to place great value upon the mine; and
he referred Fulton to Baker, an engineer, then in the em-
ployment of Fulton himself, for the truth of his representa-
tions.   Baker was applied to by Fulton, and confirmed their
truth.

Further: The facts stated as to the discovery of the mine,
the procuring coal with great facility, and the purchase of
the land, are fully confirmed by Rector.   The fact of the
appellant's taking a large quantity of coal on his second pas-
sage down the Ohio, is admitted; but it is alleged that it had
been fraudulently placed there.   This allegation is totally
unsupported.   White proves the existence of a coal mine
of considerable magnitude; and it is not positively dispro-
ved.   The witnesses, M'Donald and Bristow, knew of no
coal mine in that vicinity, except one in the bed of the river;
but they do not state that they have ever been on the land
to look for it.

Fulton was
to work the
mine

By the contract, Fulton was to have commenced working
the mine in June, 1814, or as soon as convenient thereafter;
and if the coal failed, then the salary or annuity was to

But did not. cease.   It does not appear that Fulton ever took any mea-
sures to fulfil this part of the contract, or that any measures
for this purpose were adopted by his representative after his
death.

There should
be full and
positive proof
of fraud or
mistake.

This contract was deliberately entered into, and ought
not to be set aside, either for fraud, or mistake, unless upon
full and positive proof.   In my judgment, the proof on the
part of the respondents does not at all support the allega-

tior of fraud, and the proof on the part of the appellant substantially supports every representation made by him.

I am of opinion, therefore, that the decree of his Honor the Chancellor, perpetually enjoining the appellant from prosecuting at law, for the recovery of the annuity, and compelling him to pay costs, should be reversed.

The existence of the coal mine, being the only point in controversy, which admits of doubt; this being strenuously asserted on one side, and as strenuously denied on the other; as the proofs are conflicting in relation to it, and as the decision of facts properly belongs to a jury; and both parties aver that they have further testimony on that subject, not now before the Court, I am further of opinion, that the Chancellor should be directed to award an issue to determine that fact.

BURT, CRAMER, LYNDE, WHEELER, and WOOSTER, *Senators,* concurred.

A majority of the Court being of opinion, that the decree should be affirmed: It was thereupon ORDERED, ADJUDGED and DECREED, that the decree of the Court of Chancery, made in this cause, be affirmed, with costs to be taxed, and that the record, &c.

