# 𝔠ases

# FIRST DEPARTMENT

AT

# GENERAL TERM,

## 𝔍anuary, 1880.

---

## CHRISTIAN F. FUNCH AND HENRY W. O. EDYE, RESPONDENTS, *v.* MAX ABENHEIM, APPELLANT.

*Contract — right of a party to refuse to perform it, on the ground that it was entered into under a mutual mistake of fact — when such mistake may be shown — Charter party — when an owner is bound to use reasonable diligence in bringing his vessel to port.*

This action was brought upon a charter party, made between the plaintiffs, as agents for the owners of the vessel, and the defendant. It was dated June fourth, and executed on June fifth. The defendant offered to prove that when the contract was brought to him on June fourth, he stated to one Edye, one of the plaintiffs, that the charter was desired for a shipment to be made in June, and that the time of the vessel's sailing from London was material ; that Edye said he would telegraph to find out when she would sail; that he returned the next day, said he had telegraphed and showed what he said was an answer, stating that the vessel sailed June fifth; that upon the statement that the vessel sailed on June fifth, the defendant executed the contract; that in fact the vessel did not sail until June twenty-third, and that Edye was mistaken in stating that he had telegraphed to London, and in stating that he had received an answer stating that the vessel would sail June fifth.

The defendant did not impute any fraud to Edye, but offered to prove these facts in order to show that the contract was entered into under a mutual mistake as to a material fact, and claimed that such mistake justified him in refusing to carry out his contract. The court refused to allow this proof to be given. *Held,* that this was error ; that it should have been received, and that if such mutual mistake was established by it, the defendant was justified in refusing to carry out the contract.

The charter party dated June fourth, but not signed until June fifth, recited that the vessel was "now lying discharging in the harbor of London," and near its close stated : "It is understood that the vessel shall proceed from London in ballast, direct to New York."

*Held,* that the proof offered by the defendant did not tend to contradict the terms of the contract.

*Held,* further, that it was incumbent upon the plaintiffs to show that reasonable diligence had been used in bringing the ship to the port of New York.

That it was error for the court to refuse to allow the defendant to show that the length of time occupied in discharging the cargo in London was unreasonable and unnecessary.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

*Robert D. Benedict* and *Frank D. Sturges,* for the appellant. The evidence offered was proper, as showing that the contract was made under a mutual mistake of a material act, and that consequently it could not be enforced. (Kerr on Fraud and Mistake, 430; *Gillespie* v. *Moon,* 2 Johns. Ch., 596; *Snell* v. *Ins. Co.,* 98 U. S. [8 Otto], 89, 90; *Rosevelt* v. *Fulton,* 2 Cow., 129; 1 Parsons on Con., 416; Story's Eq. Jur., 140–141–142–143, 153, 155, 156; *Belknap* v. *Sealey,* 14 N. Y., 143; *Roberts* v. *Fisher,* 43 id., 159; *Welles* v. *Yates,* 44 id., 529; *Story* v. *Conger,* 36 id., 673; *Nevius* v. *Dunlap,* 33 id., 676; *De Peyster* v. *Hasbrouck,* 1 Kern., 582; *Barlow* v. *Scott,* 24 N. Y., 40; *Rider* v. *Powell,* 28 id., 310; *Calkins* v. *Griswold,* 11 Hun, 210; *Wilson* v. *Randall,* 67 N. Y., 338.) The evidence was competent to establish a misrepresentation as to a material fact, which would avoid the contract, although innocently made. (Kerr on Fraud and Mistake, 60–61, 74–75; *Phillips* v. *Conklin,* 58 N. Y., 682; *Doggett* v. *Emerson,* 3 Story, 700; *Taylor* v. *Fleet,* 1 Barb., 471; *Smith* v. *Countryman,* 30 N. Y., 655; *Hutcheon* v. *Johnson,* 33 Barb., 392; *Gillespie* v. *Moon,* 2 Johns. Ch., 596; *Johnson* v. *Main,* 14 Wend., 195.) It was competent to show the purpose for which the contract was made, and the circumstances surrounding the making of the same. (*Brick* v. *Brick,* 98 U. S. [8 Otto], 514; *Cocker* v. *Franklin H. and F. Manuf. Co.,* 3 Sumner, 530–533; *Ellis* v. *Thompson,* 3 Mees. & Welsb., 445; *Hutchins* v. *Hebbard,* 34 N.

Y., 24; *Truscott* v. *King*, 2 Selden, 147–161; *Chester* v. *Bank of Kingston*, 16 N. Y., 336–343; *Messmore* v. *N. Y. Shot Co.*, 40 id., 427; *Hinnemann* v. *Rosenback*, 39 id., 98.) It was competent to show the negotiations and understanding between the parties, as to the time of the vessel's departure from London, that being a substantial part of the arrangement between them, and being left undefined by the charter. (*Mowatt* v. *Lord Londesborough*, 3 Ellis & B., 307; *McCullock* v. *Girard*, 4 Wash. C. C., 289; *Renard* v. *Sampson*, 12 N. Y., 567; *Barker* v. *Bradley*, 42 id., 316; *Almgren* v. *Dutilh*, 1 Selden, 28; *Hinnemann* v. *Rosenback*, 39 N. Y., 98; *Robinson* v. *United States*, 13 Wall., 363; *Horn* v. *Keteltas*, 46 N. Y., 605.) The law is perfectly well settled, that it was not only the right but the duty of the plaintiffs, as soon as they received the notice of the twenty-sixth of June, by which the defendant refused to carry out the contract, to seek other business for the vessel. (Molloy, B., 22, chap. 4, § 3, p. 366; *Klein* v. *Catara*, 2 Gal., 61; *Clarke* v. *Crabtree*, 2 Curtis, 92; *Baetger* v. *Bors*, 2 Ben., 294; *Willis* v. *Simmonds*, 8 Hun, 204; *Skinner* v. *Tucker*, 34 Barb., 335; *Dillon* v. *Andrews*, 43 N. Y., 237; *Hall* v. *Hurlbut*, Taney, 598; *Burtis* v. *Thompson*, 42 N. Y., 246.) To entitle the plaintiffs to recover, they must show that up to the time of the defendant's refusal to perform, they had kept the agreement on their part; otherwise the defendant would be excused for his refusal. (*Howard* v. *Daly*, 61 N. Y., citing 2 Wm. Saunders, 352 *et seq.*, note to *Peeters* v. *Opie*.) Time was of the essence of the contract and agreement contained in the charter party, that the vessel then discharging in London should "proceed from London in ballast direct to New York," is an undertaking that the vessel shall sail from London with all diligence, and is a condition precedent to plaintiffs' right to recover. (*Clipsham* v. *Vertue*, 5 Q. B., 265; Swayne, J., in *Lowber* v. *Bangs*, 2 Wall., 736; *Hall* v. *Hurlburt*, Taney, 589–594; *Weissner* v. *Maitland*, 3 Sand., 318; *McAndrew* v. *Adams*, 1 Bing. [N. C.], 29; *Glaholm* v. *Hays*, 2 Man. & Gr., 257; *Crockewit* v. *Fletcher*, 1 H. &. N., 893; 1 Parson's Mar. Law, 271, note 3; *Mount* v. *Larkins*, 8 Bing., 108; *Behn* v. *Burness*, 113 E. C. L. R., 751; *Olive* v. *Booker*, 1 Exch., 416; *Oliver* v. *Fielden*, 4 id., 135; 12 Moore P. C., 199; *Renard* v. *Sampson*, 12 N. Y., 561;

*Fearing* v. *Cheeseman*, 3 Clifford, 91; *The Schooner Onrust*, 1 Ben., 431–447; *S. C.*, 7 Blatch., 533; *Fothergill* v. *Walton*, 8 Tann., 576; *Freeman* v. *Taylor*, 8 Bing., 124; *Tarrabochia* v. *Hickie*, 1 H. & N., 183; *Hunt* v. *Usbone*, 18 C. B., 144.)

*William Allen Butler*, for the respondents. The action was properly brought in the name of the plaintiffs. (Code of Procedure, § 113; *Considerant* v. *Brisbane*, 22 N. Y., 389; *Hubbell* v. *Medbury*, 53 id., 98; *Stryker* v. *Mercantile Ins. Co.*, 44 How. Pr. R., 351.) The court properly excluded the evidence offered by the defendant. The oral declarations offered were in order to add to the written contract some statement or warranty as to the time when the vessel would finish discharging in London, or would sail from London, or would reach New York. This evidence was clearly inadmissible. (Greenleaf on Evidence, § 275; *La Farge* v. *Rickert*, 5 Wend., 187; *Renard* v. *Sampson*, 2 Duer, 285; *Mott* v. *Richtmyer*, 57 N. Y., 49; *Mumford* v. *McPherson*, 1 Johns., 414; *Reed* v. *Van Ostrand*, 1 Wend., 424; *Pollen* v. *Le Roy*, 30 N. Y., 549, 559.)

DAVIS, P. J. :

This action was brought on a charter party bearing date on the 4th of June, 1874 made between the plaintiffs, as agents for the owners of the steamship " Royal Standard," and the defendant. That the action was properly brought in the name of the plaintiffs as trustees of an express trust under the provisions of the Code (§§ 111, 113) is settled by *Considerant* v. *Brisbane* (22 N. Y., 389).

The charter party was brought to the defendant on the fourth day of June, which is the day it bears date, by Mr. Edye one of the plaintiffs; and the defendant offered in substance to show that Mr. Edye was told at that time that the charter was desired for a shipment in June, and that the time when the vessel would sail from London was material; that Mr. Edye then said he would telegraph to London to find out when she sailed; that the next day he came to defendant and stated that he had so telegraphed to London, and exhibited a telegram which he said was an answer to such inquiry; that the telegram was understood by both of

them as stating that the vessel sailed on June fifth, and that Mr. Edye verbally stated also, "this vessel sails to-day, the fifth;" that thereupon the charter was executed by the defendant; that on the twenty-fifth of June, in answer to an inquiry from the defendant, the plaintiffs wrote him that the vessel had sailed on the fifth; that Mr. Edye was mistaken at the time he made his statement as to the fact of his sending a telegram to learn the date of the sailing of the steamship and receiving an answer, and that in fact he had not so telegraphed; that he was mistaken in stating that the dispatch which he exhibited was an answer to such telegraph; that it was not in fact such an answer; that he was mistaken in saying that the vessel sailed on the fifth of June; that in fact she did not sail until the twenty-third of June; and that both parties acted in making the contract under a mutual mistake as to the fact that a telegram had been sent over to ascertain when she sailed, and a reply received to the effect that she had sailed on that day, the fifth of June.

It was not offered to show that the statements of Mr. Edye were fraudulent representations, but that he was mistaken in respect to the facts asserted by him, and that the defendant acting thereupon was also mistaken as to such facts. It was also offered to show that on the twenty-sixth of June the defendant first learned by notice from the plaintiffs that the vessel did not sail until the twenty-third of June, and that he thereupon immediately notified the plaintiffs that he did not consider himself bound by the charter party and would not load the ship.

The whole of this evidence was excluded by the court upon plaintiffs' objection, and the defendant duly excepted.

The offer was made expressly for the purpose of showing that the contract was entered into under a mutual mistake of material facts. It seems very plain that neither morality in business, nor the morality of business, would justify the enforcement of a contract made under such circumstances; and the question is whether there is any inexorable rule of law that precludes the defendant from showing the facts.

The contract speaks as of its date in all that it says in respect to where the vessel then was. That is to be found in the first clause of the charter party, which is in these words:

"This charter party, made and concluded upon in the city of New York, the fourth day of June, in the year of our Lord one thousand eight hundred and seventy-four, between Funch, Edye & Co., agents for owners of the S. S. Royal Standard, of North Shields, classed A 1, and of the burthen of 850 tons, or thereabouts net register measurement now lying discharging in the harbor of London, of the first part, and Max Abenheim, Esq., merchant of New York, of the second part."

The only other allusion to her locality is found in the clause near the close of the contract, in these words: "It is understood that the vessel shall proceed from London in ballast direct to New York."

There is nothing, therefore, in the proposed offer which necessarily contradicts any portion of the contract, because if the statement, "now lying discharging in the harbor of London," contained in the descriptive clause, is intended to be a part of the contract itself, as it of course speaks as of the date of the contract (the fourth day of June) it is not at all inconsistent with the assertion made by the plaintiffs that she had sailed on the fifth of June, before the contract was signed. Nor is there anything in the provision that the vessel shall proceed from London in ballast direct to New York at all in conflict with such assertion.

But there was no attempt made on the part of the defendant to contradict the instrument. It was simply an effort to establish as matter of fact that the contract was entered into under a mutual mistake of facts material to the transaction and inducing or influencing the agreement, believed by both to be then existing, but in which belief both were honestly mistaken. In Kerr on Fraud and Mistake, at page 416, the author, speaking with reference to mistakes such as will avoid an agreement, says: "Mistake may be common to both parties to a transaction, and may consist either in the expression of their agreement in some matter inducing or influencing the agreement, or in some matter to which the agreement is to be applied." And he defines the mistake in fact to be "one consisting in the belief in the present existence of a thing material to the transaction, which does not exist."

In *Gillespie* v. *Moon* (2 Johns. Ch., 596), Chancellor KENT

says : " It has been the constant language of the courts of equity that parties can have relief in a contract founded in mistake, as well as in fraud. The rule in the courts of law is that the written instrument does in contemplation of law contain the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol. But equity has a broader jurisdiction and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself. * * * I have looked into most, if not all, the cases on this branch of equity jurisdiction, and it appears to me to be established, and on great and essential grounds of justice, that relief can be had against any deed or contract in writing, founded in mistake or fraud. The mistake may be shown by parol proof, and the relief granted to the injured party, whether he sets up the mistake affirmatively by bill, or as a defence."

Whatever defence of that nature could be made formerly in equity can now be interposed in actions at law. Where contracts have been reduced to writing the courts are vigilant and rigorous in excluding all antecedent and contemporaneous oral agreements tending to vary the terms of such contracts.

And, perhaps, no case has gone further in that direction than the late case of *Wilson* v. *Deen* (74 N. Y., 531). In that case both parties were well advised as to the existing condition of facts, and there was no ground to allege mistake or fraud, but in the view the Court of Appeals took of the case the plaintiff, in executing a written lease under seal, relied upon a contemporaneous oral agreement in respect of important matters to be subsequently performed touching the property demised. That case, we think, is not at all in conflict with the principle that permits parties to establish a mutual mistake as to a material and supposed to be existing fact inducing the contract, or materially affecting its subject-matter.

In this case it seems apparent that the defendant desired the vessel for the purpose of shipping grain in June. For that purpose it was material for him to know at what time the vessel sailed, or would sail from London. That fact was communicated to the plaintiffs, and they undertook to ascertain the

time of her departure. They supposed they had ascertained that time by telegraphing to London, and had received an answer. In this it seems they were mistaken; but they represented, as a fact, that they had so telegraphed, and produced a telegram which both understood to state that the vessel would leave on that day, the fifth of June; Mr. Edye also stated that she sailed on that day. He was guilty of no intentional fraud in making the statement, or in producing the telegram, as the defendant admits, but by some misapprehension on his part had fallen innocently into an error.

The defendant fully believed, and had both reason and right to believe, that the facts in respect to the telegraphing and receiving a reply and as to the sailing of the vessel were precisely as stated by him, and they made the contract in that belief. It turns out that both were mistaken as to those material facts, and that the vessel did not sail for nearly three weeks afterwards.

These facts were not " prior or contemporaneous negotiations " which merged in the contract, and they were in no just sense facts or statements in conflict with express or implied provisions of the contract. The statement of plaintiffs that they had telegraphed to London and received the telegram produced in answer was an assertion of a supposed existing fact quite independent and in no sense contradictory of the contract. It was an inducement to, but no part of the contract, and being a most material fact the assertion that it existed, whether fraudulent or mistaken, justified the defendant in accepting the fact as true and acting upon it, without requiring it to be inserted in the instrument.

It would be a reproach upon the equitable powers of the court if they could not be exercised to relieve a party from a contract entered into under such circumstances, and the numerous cases cited by the learned counsel for the appellant establish, we think, his right to refuse, as he did, to go on when he learned the real state of facts in respect to the sailing of the vessel. (*Snell* v. *Ins. Co.*, 98 U. S. [8 Otto], 89, 90 ; *Roosevelt* v. *Fulton*, 2 Cow., 129 ; 1 Parsons on Con., 416 ; Story's Eq. Juris., 140–143, 153, 155, 156 ; *Belknap* v. *Sealey*, 14, N. Y., 143 ; *Roberts* v. *Fisher*, 43 id.; 159 ; *Welles* v. *Yates*, 44 id., 529 ; *Story* v. *Conger*, 36 id., 673 ; *Nevius* v. *Dunlap*, 33 id., 676 ; *De Peyster* v. *Hasbrouck*, 1 Kern., 582 ; *Barlow* v. *Scott*, 24 N. Y., 40 ; *Rider* v.

*Powell*, 28 id., 310 ; *Calkins* v. *Griswold*, 11 Hun, 210 ; *Wilson* v. *Randall*, 67 N. Y., 338 ; *Mowatt* v. *Lord Londesborough*, 3 Ellis & B., 307 ; *McCullock* v. *Girard*, 4 Wash. C. C., 289, cited in *Renard* v. *Sampson*, 12 N. Y., 567 ; *Barker* v. *Bradley*, 42 id., 316 ; *Almgren* v. *Dutilh*, 1 Seld., 28 ; *Hinnemann* v. *Rosenback*, 39 N. Y., 98 ; *Robinson* v. *United States*, 13 Wall., 363 ; *Horn* v. *Keteltas*, 46 N. Y., 605 ; *Brick* v. *Brick*, 98 U. S. [8 Otto], 514 ; *Cocker* v. *Franklin H. and F. Mfg. Co.*, 3 Sum., 530–533 ; *Ellis* v. *Thompson*, 3 Mees. & Welsb., 445; *Hutchins* v. *Hebbard*, 34 N. Y., 24 ; *Truscott* v. *King*, 2 Seld., 147–161 ; *Chester* v. *Bank of Kingston*, 16 N. Y., 336–343 ; *Messmore* v. *N. Y. Shot Co.*, 40 N. Y., 427. And it seems to us, in the language of STORY, J., in *Doggett* v. *Emerson* (3 Story, 700), that it is "immaterial whether the representation be willfully and designedly false or ignorantly and negligently untrue."

We think the learned court was in error in excluding proof of the mistake, because proof that the plaintiffs made the assertion, but had not telegraphed and had not received any answer, would not contradict any provision of the contract, expressed or implied.

We are also of opinion that the court was in error in holding that it was not incumbent upon the plaintiffs to show that reasonable diligence had been used by them in bringing the ship to the port of New York. If all evidence in respect to the mistake of fact as to her time of sailing were to be excluded from the case, then it would seem necessarily to follow that plaintiffs were bound to show that she did in fact sail with all reasonable diligence. The evidence shows that she occupied nine days after the fourth of June in discharging her cargo in London, and that it was nine days after the discharge was completed before she sailed from London. The law required that she should proceed with reasonable diligence. (*Renard* v. *Samson*, 12 N. Y., 561.) The motion of the defendant's counsel was improperly overruled, for the court could not, as matter of law, hold that a delay of eighteen days was a reasonable one.

Again, the court erred in not permitting the defendant to show that the length of time occupied in discharging the cargo in London was unreasonable and unnecessary. The master of the

vessel had testified that she was discharged as soon as vessels ordinarily are in London. ·The defendant called another ship-master who had been such for twenty years, and been also master of British sailing vessels, and· had seen steamers loaded and unloaded in London, and asked him what would have been the usual time of discharging 7,200 quarters of grain with ordinary dispatch. This was objected to and excluded, and the defendant duly excepted.

Defendant's counsel then offered to show that the parties " did not exercise due diligence in the discharge of the cargo of the Royal Standard in June, 1874, whereby she was delayed in her arrival here." The court excluded the offer, and an exception was duly taken. We think this was error.

There are numerous rulings and exceptions in respect to the evidence bearing upon the question of the ability of the plaintiffs to have procured freight for the steamer after the breach of the contract. The contract was broken by the notice given by the defendant to the plaintiffs on the twenty-sixth of June that they would not perform it. (*Burtis* v. *Thompson*, 42 N. Y., 246; *Dillon* v. *Anderson*, 43 id., 231, 237.) In the last cited case the court say : "It was the duty of the plaintiff, as soon as due notice was given, to have so acted as to save the defendant from further damage, so far as it was in his power, and the performance of this duty called for affirmative action on his part." (*Hamilton* v. *McPherson*, 28 N. Y., 72; *Clark* v. *Marsiglia*, 1 Denio, 317; *Goodwin* v. *Kirker*, 2 Hilton, 401.) The evidence tended to establish that no effort was made by the plaintiffs to secure a charter party for the vessel to arrive ; and numerous rulings were made by the court excluding evidence tending to show the prices of freight, and its abundance during that and other periods, for sailing vessels as well as steamers, and for vessels chartered as this was, and for general cargoes.

It is not worth ·while, as there must be a new trial on other grounds, to enter into details as to these rulings and exceptions. A portion of them, we think, were clearly wrong ; and, although the court in its charge probably laid down the correct rule as to the measure of .damages, it seems to us quite apparent that the defendant was not permitted to lay all the evidence before the

jury bearing upon that question which would have been proper for their consideration.

The judgment should be reversed, and a new trial ordered, with costs to abide events.

Ingalls, J., concurred.

Present — Davis, P. J., and Ingalls, J.

Judgment reversed, new trial ordered, costs to abide event.