GREEN, Respondent, v. MOFFETT & STILLWELL, Appellants.

1. By the statute law of this state (see sess. acts, 1841, p. 86 ; R. C. 1845, p. 1077,) a "ton" of hemp is 2000 pounds avoirdupois and not 2240 pounds.
2. Evidence to the effect that by custom or mercantile usage a "ton" of hemp consists of 2240 pounds instead of 2000 pounds, is not admissible in the interpretation of contracts.

*Appeal from Hannibal Court of Common Pleas.*

This is a suit brought to recover a balance of money claimed to be due upon hemp delivered to defendants under a contract of which the following are the material portions : " Hannibal, Missouri, April 14, 1852.   This agreement, this day made and entered into by and between Erasmus M. Moffett and Brison Stillwell, of the first part, and William N. Green, of the second part, witnesseth : that said Green has this day sold to the said Moffett and Stillwell thirty-five tons of hemp of the best quality brought to this market ( except choice selections ), to be baled in sound and clean second hand gunny bags, for which the said Moffett & Stillwell are to pay said Green seventy dollars per ton ; also fifteen tons of hackled hemp, at one hundred and ten dollars per ton, of strictly choice quality and thoroughly cleansed, to be as nearly uniform in color as practicable, to be put up in new gunny bags, and the whole to be stored by the said Green in his brick warehouse, in, &c.   The hemp to be delivered in lots of from five to ten tons into said warehouse, and the whole delivery to be made by the first of September next. One half of the money to be paid on each delivery, and the balance in two months after the final delivery, &c.   In witness whereof, we have hereunto set our hands the day and year first above written.   [Signed] E. M. Moffett, B. Stillwell, W. N. Green."

Upon this instrument there were the following endorsements : " W. N. Green is hereby authorized to deliver the thirty tons of hemp, named in this contract, without covers, the said Green

to deduct one dollar per ton as a consideration. [Signed] B. Stillwell." " Received of William N. Green, twenty-seven thousand nine hundred and two pounds of hemp on the above contract. October 1st, 1852. [Signed] E. M. Moffett, B. Stillwell."

It was admitted in the pleadings that the time within which the hemp was to be delivered was extended by the parties, and it was verbally stipulated that plaintiff might deliver said hemp at any time before November 13th, 1852.

Plaintiff alleged in his petition that on the 1st day of October, 1852, he delivered to defendants 2287 pounds of hemp, covered with gunny bags, which, at the rate as specified in the agreement of $70 per ton, amounted to the sum of $80 04 ; that on the same day he delivered to defendants 25,615 pounds of said hemp, not covered, at the rate of $69 per ton, amounting to the sum of $883 71 ; that the whole indebtedness thereby incurred amounted in the aggregate to the sum of $963 75. Plaintiff admitted the receipt from defendants, on account of the hemp delivered as above, of $450 25, and claimed judgment for a balance of $513 50.

Defendants, in their answer, admit the delivery of the 27,902 pounds of hemp as stated in the petition ; they allege that, at the time of the delivery, they paid plaintiff one half the contract price of the hemp delivered and twenty dollars by way of advance on the contract ; this twenty dollars not being due to plaintiff when he received the hemp, but being advanced as a matter of favor. They further allege that they have at all times been ready, and willing to keep and perform all the stipulations of the contract, and have so kept and performed them so far as they were bound to do ; that plaintiff has not kept or performed said contract, but has broken and violated the same, in this, that plaintiff has done nothing towards fulfilling his contract, save the delivery to defendants of the 27,902 pounds of hemp, although, from time to time, before and on the said 13th day of November, 1852, he has been and was repeatedly requested by defendants to deliver them the hemp as he was

bound by the contract to do ; he being at the same time in-
formed that defendants were ready, able, willing and anxious
to pay him for the hemp, when delivered, so as in all things to
comply on their part with the contract; that on the 13th day
of November, 1852, defendants tendered to plaintiff in cash
the sum of $1592 75, and offered to pay the same to him, pro-
vided he would deliver to them the said hemp, but plaintiff then
and there failed and refused so to do. This sum of $1592 75
was the amount which it was estimated would have been due
to plaintiff by said contract on said 13th day of November,
had he then delivered the hemp to defendants as by them re-
quested.

Defendants also claim damages for the breach of the said
contract; and allege a rise in the price of hemp between April
14th, 1852, the date of the contract, and November 13th,
1852.

In an amended petition plaintiff alleged that he did deliver
the hemp according to the terms of the contract, but that de-
fendants refused to receive it, or to pay him or tender to him
the amount due for said hemp according to the terms of the
contract, or to pay him the amount due for the hemp received
by them as set forth in the original petition ; that he (plain-
tiff) complied in all respects with his stipulations under the
contract, but that defendants wholly failed to comply with their
obligations under said contract, or to pay plaintiff the money
due him for said hemp under the terms of said contract.

On the trial, evidence was offered tending to show that plain-
tiff had stored in the warehouse named in the contract a quan-
tity of hemp equal to that remaining undelivered under the
contract ; that he was ready, and willing, and offered to deliver
to defendants the portion of the hemp so undelivered, upon the
payment of the sum agreed upon in the contract, but that he
refused to deliver the hemp unless he were first paid the money
due under the contract upon delivery, with defendants' notes,
due sixty days from date, for the sum remaining unpaid. The
evidence also showed that defendants offered to make the pay-

ments due under the contract upon the delivery of the hemp, but would not make any payments until the hemp should be delivered ; that on the 13th day of November; 1852, defendants offered to pay plaintiff the sum of $1592 75 upon delivery of the hemp remaining undelivered under the contract of April 14th, 1852, that being the sum estimated to be due plaintiff, in cash, upon such delivery ; that plaintiff refused to so deliver, although delivery was demanded by defendants.

Defendants offered the testimony of certain witnesses to prove, that by usage and custom of merchants and hemp-dealers in Hannibal and elsewhere in Missouri, a " ton" of hemp has invariably been understood to mean 2240 pounds avoirdupois. The testimony was rejected by the court, and to its exclusion defendants excepted. Defendants also offered to prove by a witness that plaintiff had said in his presence and hearing that the word " ton," used in the contract sued on, was intended by both the parties, when they signed it, to mean 2240 pounds. This testimony was excluded on the objection of plaintiff.

The evidence showed a rise in the price of hemp between April 14th, the date of the contract, and November 13th, 1852.

The following instructions were asked by the plaintiff : " No. 3. If the jury find from the evidence that the defendants received from Green, the plaintiff, 2285 pounds of covered hemp and 25,615 pounds of uncovered hemp on the contract read in evidence, they will find for the plaintiff the amount of said covered hemp, computing the same at $70 per ton, and said uncovered hemp at $69 per ton ; and estimating each ton to consist of 2000 pounds avoirdupois weight ; deducting therefrom such amount as the defendants may have paid on account of the same. 4. The plaintiff (Green) had the legal right to retain the custody and possession of the hemp, after it was stored in the warehouse, until the defendants had paid the amount by the contract stipulated to be paid or tendered the same. 5. If

the jury find from the evidence that the plaintiff (Green), from the 10th to the 13th of November, 1852, had stored in the brick house, in the contract named, 72,569 pounds of hemp, in accordance with his contract, and that he at the same time notified the defendants of his having the same stored as aforesaid, that this was a compliance on his part of the contract.    6. That before the defendants can recover any damages in this cause for a breach of the contract sued on, they must prove to the satisfaction of the jury, that after they were notified by the plaintiff (Green) of his having the hemp stored as aforesaid, they tendered to the plaintiff the full amount due to Green, as stipulated in the contract, to be paid when the same was delivered."    The court gave the instruction number 3, to which defendants excepted, and refused the other instructions, to which refusal plaintiff excepted.

Defendants asked the following instructions : " 1. The plaintiff had no right to demand of the defendants that they should pay him any money *before* he delivered them the hemp as called for in the contract ; and if he refused up to the 13th of November, 1852, to deliver the balance of the hemp due, because defendants would not first pay him the one half of the contract price thereof, then such refusal was on his part a violation of the contract.    2. If the jury believe from the evidence that from the 10th to the 13th of November, 1852, the defendants were willing and able to receive from the plaintiff all the hemp then due on the contract, and pay him for the same, but that the plaintiff refused to deliver the said hemp until the same was paid for by defendants, and so did not deliver the same, then such failure to deliver was on the part of the plaintiff a violation of his contract.    3. It is not necessary that the defendants should have made to the plaintiff an *actual* tender of the cash payment on the hemp stipulated for in the contract.    It is sufficient, if it appear from the evidence in the cause, that the defendants were ready and willing to receive the hemp contracted for, and pay for it according to the terms of the sale, and that plaintiff had notice of such readi-

ness and willingness; and, if it so appears from the evidence, and that plaintiff was thereupon requested to deliver the said hemp, and neglected or refused to do so, then the jury should consider that the plaintiff broke the contract between him and defendants given in evidence, and give them such an amount of damage as has been the direct result of such breach of contract. 4. If the jury believe from the evidence in the cause, that the defendants were ready and willing to receive and pay, according to contract, for hemp which remained undelivered by plaintiff after the 27,902 pounds were delivered to defendants, and that plaintiff had notice that defendants were so ready and willing, but refused to deliver said hemp upon the ground that the defendants would not pay the deferred payment, or give a negotiable note therefor, when delivery should be made, then the plaintiff has violated his contract, and the defendants are entitled to have allowed to them the difference between the price stipulated to be paid for said hemp and the price thereof in Hannibal at the time the same should have been delivered, according to the terms of the contract. 5. If the jury believe from the evidence and under the instructions given them by the court, that the plaintiff failed to deliver the hemp to defendants, as required by the contract, and so broke the contract, then the plaintiff can not in this action recover any thing from defendants for or on account of the 27,902 pounds of hemp which he delivered to defendants on the 1st of October, 1852, and the verdict must be for defendants. 6. If the jury should find that the plaintiff has violated his contract by failing to deliver the hemp thereby required, but that the defendants have in no way violated or failed to perform their part of the contract, then the jury may find for the defendants such damages as they sustained by means of the plaintiff's failure to perform his part of the contract, and the measure of such damages is the difference between the contract price of all hemp the plaintiff neglected under and by the terms of the contract to deliver to defendants, and the market value of such hemp in Hannibal

at the time the same should have been delivered to defendants by plaintiff."

The court gave instructions numbered 1, 2, 3, 4 and 6, to which plaintiff excepted, and refused the one numbered 5, to which refusal defendants excepted.

The jury gave a verdict for the plaintiff for $128 75, and a motion for a new trial, made by defendants, having been over-ruled, defendants appealed.

*Porter* and *Richm nd*, for appellants. 1. The plaintiff was not entitled to be allowed any thing for his part compliance with the contract, the failure to deliver the residue of the fifty tons of hemp (over and above the 27,902 pounds, delivered and paid for, so far as required by the contract) not being excused by any default or failure of the defendants in the premises. It is insisted, in view of the terms and stipulations of the contract in issue, that the defendants have not waived its entirety, and that, being a special contract, plaintiff must have shown a compliance on his part before he could recover any thing. (12 J. R. 94.) 2. The evidence offered by defendants to show that by the custom and usage of trade, invariable and uniform, "the ton of hemp" meant 2240 pounds avoirdupois, and not 2000 pounds, as plaintiff contends, should have been permitted to go to the jury. Also, the evidence offered on the same side tended to show that the parties both understood the contract and originally intended to carry it into effect, according to said usage and custom, should have been admitted. And for the like reason the third instruction asked by plaintiff should have been refused. (1 Greenl. Ev. § 292, 293, 294, 295, and note 1; Soutier v. Kellerman, 18 Mo. 509.) 3. The stipulations of the parties in the written contract sued on, were mutual and dependent. No actual tender of the purchase price, therefore, was requisite on behalf of the defendants, before plaintiff was bound to deliver the hemp sold, and promised to be delivered at a place designated in the contr ct. It was enough that defendant showed (as he did) that they were ready, willing and able to pay according to the said contract. The plaintiff's in-

structions on this point were rightly refused. (1 Chitty's Pl. 356, 6th Am. ed., and authorities cited ; Labeaume v. Hill & McKeese, 1 Mo. 42.)

*J. O. Broadhead,* for respondent. The only questions properly presented by the record are those arising out of the 3d instruction given for plaintiff, and the 5th instruction asked by the defendant, and refused by the court. 1. Plaintiff contends that the word ton, as used in the contract sued upon, means 2000 pounds avoirdupois. (See R. C. 1845, p. 1077,) and that the court was right in excluding all evidence tending to show that, according to mercantile usage, the ton consists of 2240 pounds. The appropriate office of a usage is to interpret the otherwise indeterminate intention of the parties, and to ascertain the nature and extent of their contracts, arising from implications and presumptions. (2 Sumn. R. 569.) No usage can be sustained in opposition either to the general principles or the positive enactments of the law. (Chitty on Cont. 82, and note ; Smith's Mercantile Law, 29 ; 10 Mass. 29.) 2. The court was right in refusing the 5th instruction asked by defendants. The contract is not entire, but is divisible. But even if it were an entire contract, the defendants themselves have destroyed its entirety by accepting part performance, receiving the hemp, and retaining the benefit of it, and must pay for what they have received. (Chitty on Cont. 737 ; id. 446 ; 18 Pickering, 555.)

RYLAND, Judge, delivered the opinion of the court.

The questions in this case involve the proper construction of the contract, and also the meaning, as therein used, of the word " ton," under the statute. We have no doubt but that, under the contract and proof made in this case, the plaintiff is entitled to have pay for the hemp delivered, and received by the defendant, according to its value ; not according to the contract price. The contract was broken, not fulfilled ; and, although the plaintiff delivered and the defendant received hemp,

yet the price agreed upon in the contract is not to govern in estimating its value at the time of its delivery and acceptance, but the real value of the article delivered and received is to be the criterion. Under this view of the law, then, the third instruction given by the court for the plaintiff, fixing the contract price as the value of the hemp, is erroneous; but this error does not prejudice the defendant in this case, for the proof shows, beyond doubt, that this contract price was less than the real value of the hemp; so the defendants have been benefitted, not injured by this error, and can not complain thereof. Again, although this third instruction given for the plaintiff is incorrect, yet its error is rendered innoxious by the 6th instruction given for the defendant. There was but one instruction given for the plaintiff—the third—as set forth in the statement of the case, and but one refused for the defendants—the 5th—as mentioned in the statement.

It was competent for the defendants to set up by way of defence the breach of this contract on the part of plaintiff, and the rule for assessing the damages is well laid down in the 6th instruction given by the court for the defendants. There is no error, then, in these instructions upon this view of the case; and had this been the whole dispute between these parties, we, in all probability, should have never seen this case.

But there is another cause of complaint, and, we presume, the chief one; it is the meaning of the word " ton," as given by the court to the jury. The court informed the jury that, under our statute law, a ton of hemp meant 2000 pounds avoirdupois, and not 2240 pounds. On this point, too, the law is for the plaintiff, and was properly laid before the jury. In February, 1841, the legislature declared, by express statute, that " hereafter, when sales of hemp shall be made, the delivery of one hundred pounds avoirdupois weight shall be considered as the delivery of one hundred weight, any custom or usage to the contrary notwithstanding." (Sess. Acts, 1841, p. 86.) In 1845, (R. C. p. 1077,) the legislature again say: " The hundred weight shall consist of

one hundred pounds avoirdupois, and twenty such hundreds shall constitute a ' ton.' " Here is the statute law of the land since 1841, and shall it be proved away by custom ? The law-makers struck at this custom, this usage, and by law abolished it. Now when parties make contracts about hemp, they can easily agree to pay or to take so much money for so many pounds of hemp ; but if the bargain be only by the " ton," then the law says what the " ton" is, and no proof will be ad-mitted about custom or usage or understanding—the contract can be proved, and when proved, if there appear a buying and selling by the hundred weight or by the ton, the law fixes a meaning to these terms ; and when the law is appealed to for the remedy, it applies its own meaning. Let the judgment therefore be affirmed ; the other judges concurring.