CATHERINE HINNEMAN AND JACOB HINNEMAN,
ADMINISTRATORS OF THEODORE HINNEMAN, DECEASED,
v. SAMUEL ROSENBACK.

*Contract—Parol evidence—Explanation.*

When, according to the terms of a written contract between the parties, a
part of the payment to be made consisted in an order for five hundred dol-
lars, to be given on Messrs. W. & T.—

*Held*, that parol evidence was admissible to show whether the order was to
be for the payment of money, or for the payment of five hundred dollars in
sash and blinds, manufactured by said W. & T.

On the 16th of January, 1861, the Defendant and Theodore
Hinneman made a written contract, by which the latter agreed to
build a house for the Defendant, which said contract was in the
words and figures following :

"This agreement, made and entered into this 21st day of Janu-
ary, 1861, by and between Samuel Rosenback, of the city of Syra-
cuse, county of Onondaga, and State of New York, of the first
part, and Theodore Hinneman, of the above-named city, county,
and State, of the second part, witnesseth : That the said Theodore
Hinneman, party of the second part, for the consideration here-
inafter mentioned, doth covenant and agree to and with the party
of the first part, to make and build and finish, in a good, substan-
tial, and workman-like manner, on the lot of the said party of the
first part, on Jefferson Street in the city of Syracuse, a dwelling-
house, agreeably to the plans and specifications, of good substan-
tial materials ; and the said Theodore Hinneman, party of the
second part, doth further covenant and agree to finish and deliver
the same into the hands of the party of the first part on or before
the first day of July next.

"And the said party of the first part covenants and agrees to
pay unto the party of the second part, for the faithful perform-
ance of the same, the sum of one thousand seven hundred dollars,

17

lawful money of the United States, and five hundred dollars in an order on Messrs. Woodruff & Taylor, of Oswego ; also a house and lot on the north-east corner of Jackson and Mulberry Streets, in the city of Syracuse, and the house now on the lot on which the party of the first part designs to build. The money to be paid as follows : Five hundred dollars the first day of May next, five hundred dollars the first day of June next, and the balance when finished. The house and lot on the corner of Mulberry and Jackson to be deeded to said Hinneman upon the signing of this agreement ; also the house now on the lot on Jefferson Street.

"In witness whereof the parties to these presents have hereunto set their hands and seals, the day and year first above written.

     (Signed) " SAMUEL ROSENBACK. [L. S.]

        " THEODORE HINNEMAN. [L. S.]

"Signed and delivered in the presence of

       " L. E. JOY."

The Plaintiff performed the whole work according to the terms of his contract, and the Defendant paid him the price fixed by the contract, and fully performed, on his part, except the $500 payable in the order on Woodruff & Taylor—the Plaintiff claiming and insisting that the contract entitled him to an order payable in money, and the Defendant insisting on the right to give him an order which, by its terms, was payable in sash, blinds, and other joiner-work ; Woodruff & Taylor being manufacturers of such articles at Oswego.

Upon the trial of the cause the referee allowed the Defendant to give certain parol evidence, for the purpose of showing that this expression in the contract meant an order payable in the building materials manufactured by Woodruff & Taylor, and not in cash ; and the real question in the case is whether this evidence was properly received ; and, secondly, whether the referee was right in holding that the true intent and meaning of the contract was, that this order on Woodruff & Taylor should be drawn payable in sash, blinds, &c.

The referee found that such was the true construction of the

contract; and as the Defendant had offered the Plaintiff such an order, the referee gave judgment for the Defendant, which was affirmed on appeal to the General Term, and from which judgment the Plaintiff has appealed to this Court.

*W. V. Bruyn* for Plaintiff.

*Wm. C. Ruger* for Defendant.

MASON, J.—I am satisfied, after a careful examination of this case, that the referee committed no error, in admitting the parol evidence to aid in the interpretation of this contract, which can prejudice the Plaintiff, and that he gave the correct construction to this agreement.

The language of the contract itself favors the construction put upon it by the referee. By the terms of the contract, the Defendant was to pay Hinneman, for the construction of his dwelling-house, the sum of one thousand seven hundred dollars, lawful money of the United States, and to convey to him the house and lot on the corner of Mulberry and Jackson Streets, and to deed to said Hinneman, upon the signing of the agreement, the house on the lot on Jefferson Street, and to pay him *"five hundred dollars in an order on Messrs. Woodruff & Taylor, of Oswego."* It is not a reasonable construction of the contract itself to hold that these parties meant a cash draft on Woodruff & Taylor. He was to pay $1,700 in cash, and $500 in an order on Woodruff & Taylor, of Oswego.

The legal definition of an order does not ordinarily mean a cash draft. Bouvier says that " an informal bill of exchange, or a paper which requires one person to pay or deliver to another goods on account of the maker to a third party, is called an order " (Bouvier's Law Dictionary, title " order," 2d vol., p. 257); while a draft or bill of exchange is defined to be " an open letter of request from, and order by, one person on another to pay a sum of money therein mentioned to a third person, on demand, or at a future time therein specified " (1 Bouv. Law Dictionary, 189). A draft, at the present day, is " the common term for a bill of exchange " (1 Burrill's Law Dictionary, 520, title

" draft "); and a draft and bill of exchange are used indiscriminately. Edwards says : " The bill of exchange, properly termed a draft, is written in the form of an open letter, directing the person to whom it is addressed to pay the sum of money therein specified to a third person named in the instrument, on account of the writer or person by whom it is drawn " (Edwards on Bills and Promissory Notes, 41 ; Chitty on Bills, 130, 154).

It must be payable in money (Thompson v. Sloan, 23 W. R. 73 ; Cook v. Satterlee, 6 Cow. R. 108 ; 5th ed., 186). Not so with an order ; the more common definition is that given by Bouvier, as an order to pay goods on account of the maker to a third person. It was only necessary in this case to prove that Woodruff & Taylor were manufacturers of these articles, necessarily used in house-building, to raise a reasonable presumption that it was the intention of these parties that this order should be for such articles, especially as it was proved that these parties knew that such was the business of Woodruff & Taylor.

We cannot shut our eyes to the fact that the Plaintiff was, in this agreement, entering into a contract to build a dwelling-house for the Defendant; where these very materials would be required in its construction ; and when we add to this the fact that the Defendant, in the contract, agreed to pay $1,700 in cash, and an order on Woodruff & Taylor for $500, the presumption is very strong that this order did not mean a cash draft on them.

To my mind it is clear. Be this as it may, if the matter was left in doubt, it was certainly competent to remove it by the parol evidence in the case. The rule is a common one, to receive evidence external to the contract in aid of the interpretation of its language. Such evidence, however, cannot be received to contradict or vary the terms of a written contract ; and where the instrument has a settled legal meaning, its construction is not open to parol evidence (2 Parsons on Contracts, 63). But where, as in this case, the order may mean a money order, or an order payable in those kind of building materials, there can be no doubt that the interpretation of the language of the contract may be aided by extrinsic evidence showing the intention of the parties

in the use of the language in the particular instrument (2 Parsons on Contracts, 76).

I am quite inclined to the opinion that it was not competent for the Defendant to prove that he held a note or due-bill, made by Woodruff & Co., payable in these materials.

Its admission, however, affords no ground for granting a new trial; for the case is too clear for the Defendant, without this evidence, to be doubted. If this evidence were out of the case, the finding must have been the same; and were the finding otherwise, it would be erroneous.

The judgment of the Supreme Court must be affirmed.

CLERKE, J. (dissenting).—This action was brought to recover the sum of five hundred dollars, alleged to be due on a building contract. The consideration was expressed in the following words : "And the said party of the first part covenants and agrees to pay unto the party of the second part, for the faithful performance of the same, the sum of one thousand seven hundred dollars, lawful money of the United States, and *five hundred dollars in an order on Messrs. Woodruff & Taylor, of Oswego;* also a house and lot on the north-east corner of Jackson and Mulberry Streets, in the city of Syracuse, and the house now on the lot on which the party of the first part designs to build. The money to be paid as follows : Five hundred dollars the first day of May next, five hundred dollars the first day of June next, and the balance when finished."

All of this consideration was paid except the $500 payable in an order on Messrs. Woodruff & Taylor. Woodruff & Taylor were manufacturers of sash, blinds, and joiner-work, at Oswego, and the Defendant held their promissory note for $500, payable in their joiner-work, sash, blinds, doors, &c.

The only question in this case is, whether the sum of five hundred dollars, which the contract stipulated should be paid in an order on Messrs. Woodruff & Taylor, is payable in currency, or in the work and materials mentioned in the promissory note held by the Defendant at the time of the execution of the contract.

It will be perceived that the contract contains no reference whatever to the promissory note; but the Defendant's counsel contended he had a right to show, by parol testimony, that the parties intended and agreed that this sum should be paid in the manner specified in the note.

Is this a case in which parol evidence is admissible to explain a written agreement? The only ground on which such evidence can be admissible in this case is, that the portion of the agreement stating that five hundred dollars shall be paid in an order on Messrs. Woodruff & Taylor contains a latent ambiguity, or that the terms employed to express the method of payment require a parol explanation to enable the Court to interpret it.

The referee, in his opinion, and the General Term, I think, pronounced it a case of latent ambiguity. But a latent ambiguity, as we all well know, is where the instrument, on its face, is sufficiently certain and free from ambiguity, but the ambiguity is produced by evidence of something extrinsic, or some collateral matter out of the instrument; and it is maintained here that the note of Woodruff & Taylor is the extrinsic or collateral matter requiring parol explanation.

But if the mere existence of another writing raises an ambiguity, within the meaning of the rule, then the general rule forbidding the introduction of parol evidence to explain, vary, or discharge written instruments, will no longer have any practical effect.

The evidence which is said to raise an ambiguity in a written instrument is very different from that furnished by this note. As, for instance, the example given in the books : " If a person grant his manor of S. to one and his heirs, so far there appears to be no ambiguity; but if it should appear on the trial that the grantor has the manors both of South S. and North S., this ambiguity is matter of fact, and parol evidence may be admitted to show which of the two manors the grantor intended to convey."

Or if, in the case under consideration, it appeared by extrinsic evidence that there were two firms at Oswego of the name of Woodruff & Taylor, and that there was a dispute as to which

firm the parties meant, this would raise a latent ambiguity, and evidence by parol would be admissible to explain it.

From the example it is evident that, in case of latent ambiguity, the extrinsic evidence which raises it produces the uncertainty of itself, necessarily and palpably; and all that is left for the Court is to ascertain by parol to which of two or more things the ambiguous language is to be applied. It does not require an assertion or suggestion, much less an argument, that an ambiguity appears.

The extrinsic fact, which, it is alleged, produces the ambiguity in this case, is the existence of a promissory note, made by Woodruff & Taylor, for $500, payable in work and materials. How does this fact produce uncertainty or ambiguity in an instrument which provides for the payment of $500 in the ordinary method? It may, indeed, suggest a probability to the mind, that the latter payment was intended by the parties to be made in the same way as the other.

But we are not speculating on probabilities or improbabilities. In the one case the writing shows that payment was to be made in a peculiar and exceptional manner; in the other, it was to be made in the ordinary manner; and it is gravely maintained that this fact of itself necessarily produces an ambiguity, which admits of parol evidence to prove that the parties, when making the contract, stipulated that the payment should be made in the peculiar and exceptional, and not in the ordinary manner provided for in the written instrument.

When it is provided that a payment shall be made in "dollars," the meaning is manifest. The necessities of social and commercial intercourse, as well as the rules of evidence, require that ordinary words should be understood according to their common and general acceptation.

Consequently, when an order, or bill of exchange, or any writing provides that payment shall be made in "dollars," it means lawful currency of the United States of America; and an offer to show by parol that the parties meant anything else, is obviously an offer to violate the rule forbidding the introduction of parol evidence to vary or contradict a written instrument.

This is a rule to which the Courts have rigidly adhered from a very early period of judicial history. No rule has operated more beneficially in its general effect. No one disputes that it would be most mischievous to admit evidence to prove that the maker of a written instrument intended something which his language does not express; evidence which, in the language of Wigram (Extr. Ev. 65), "passing by and disregarding the written instrument, seeks to import into and engraft upon it an intention independent of its terms."

The inevitable result would be to impair, if not destroy, the advantages of security which written agreements are calculated to afford. The latest instance of strict adherence to the rule on the subject, I find in Millard v. Bailey (1 Law Rep., Eq. 378), decided by Vice-Chancellor Wood in January, 1866.

A testatrix left four children, and a godchild whom she had educated. She had 74 shares in a gas company; originally she had only 37; but by a new arrangement the company had extended its business, and issued a new share to its stockholders for each original share, making the 74 above mentioned.

She, however, always called them 37—treating each as a double share. She made a bequest, under this idea, to her four children of thirty-three shares, followed by a bequest to her godchild of the "remaining shares," no doubt thinking that the godchild would be entitled only to four of the double shares, or eight single shares, and that her four children would have thirty-three double, or sixty-six single shares.

But the godchild claimed that she was entitled under the will to forty-one single shares. Parol evidence was offered to show that the testatrix was in the habit of treating, and intended to treat, the shares as double shares, so as to pass to her godchild, by the residuary gift, four double, or eight single, and not forty-one single shares.

The Vice-Chancellor (Wood) held it inadmissible, adding: "However much one may regret the result, I cannot treat the description of these shares in the will as being of double, and not of single shares . . . . I cannot allow particular expressions,

said to have been used by this testatrix, to prevail where they are not the general language universally applicable to the particular subject-matter."

The case under consideration does not show a patent ambiguity, and parol evidence should not have been admitted on any other ground.

In this contract there are no terms of art, no technical or foreign words, no ancient words fallen into disuse, which require parol interpretation. It refers to no other instrument; the note of Woodruff & Taylor is not alluded to; it contains nothing of a peculiar sense different from the popular sense of the words which it employs, and these words, as I have before said, must be understood in their plain, ordinary, and popular signification. The word "dollar" certainly has but one meaning, understood of all ·men.

When, in a promissory note or bill of exchange, or any other instrument, negotiable or not, I promise to pay a certain number of dollars, the plain and ordinary meaning is, that I shall pay the sum mentioned in lawful currency; and to show, by parol, that I undertook to pay it in law-books or in law stationery, would be a palpable violation of the rule, which declares that parol evidence cannot be admitted to contradict or vary the terms of a written instrument.

The judgment should be reversed, and a new trial ordered; costs to abide event.

Affirmed.

<div align="right">

JOEL TIFFANY,<br>
State Reporter.