Brady, J.
The learned referee upon the trial received evidence of the conversations had prior to the delivery of the presses, and, indeed, relating to the terms upon which the purchase of them could be made, which was objected to upon the ground that the terms of the purchase were stated in the written contract. The referee, upon this objection being interposed, said that he admitted the testimony, for introductory purposes, to show that the transaction was between the parties which led up to the making of the contract.
Mr. Boughton was the witness then upon the stand, and he was asked this question:
“Please state what was said by yourself and by Mr. Tousey with reference to the terms to which you had referred?”
This was objected to, on the ground that the contract between the parties was reduced to writing. The objection was overruled and an exception taken. His answer was that he took that contract to Mr. Tousey to sign, who declined, saying he would not give a mortgage on his property, whereupon Mr. Boughton said, “All right, you sign that contract, and we will take the title clause as our security.”
This was all that was admitted on the subject, although the conversation relating to it is given more elaborately than here quoted. The object seems to have been to remove any •doubt which might exist as to the interpretation or con- ' *202 struction to- be put upon the words: “Security for the paym ents made by note.” Whether, in other words, the-note „.„.elf was to be the security or the note to be given was to be secured by some additional obligation.
The referee, in a very well-considered opinion, adopted the construction contended for by the plaintiff, that Tousey having made default in his payment and having failed to give security other than the note itself the contract wad-broken and the plaintiff was entitled to resume the possession of its property. He said: “I am of the opinion that-the construction contended for by the plaintiff is the correct one. As a matter of ordinary use the word ‘made’ is; properly and usually associated with ‘payment.’ In ordinary parlance ‘ payments are made ’ and ‘ security is given; ’' and while it might not be absolutely improper to speak of payments being ‘given’ or security being ‘made,’ still such-expression would be unusual and lacking the full significance which the associations of constant use have attached to these common phrases. A glance at the last sentence, in the written agreement shows unmistakably that the parties-to it did not intend to adopt any new form of expression. The sentence referred to is as follows: ‘ It is agreed that the title to the above described property remains in the seller-until the payments have been made or the security given for the deferred payments as above agreed.’ Here we find, the words in question associated in the usual manner. Further, the language following the word ‘ until’[s intended to define the previous agreement and is in itself a clear exposition of what that agreement was intended to be. By the terms of the contract settlement for the presses was to-be made by notes having a definite time to run. To give to the stipulation ‘security for the payments made by note,’ the construction contended for by the defendant would be-merely a useless repetition of a former provision to the same effect. I think, upon the face of the paper, itself, it is plain that- in using the word ‘security,’ other security was intended by the parties than simply the notes themselves.”
It is thought the referee, in this interpretation of the contract, has developed the intention of the parties. It is perfectly obvious that giving a note for a debt is not securing the debt. The note itself only express in writing the-amount to be paid. It avoids the necessity of the introduction of parol evidence to establish it. It marks, in other-words, the price to be paid or the consideration to be given and settles the time when the payment shall be made. It places the seller or creditor in no better condition than he would be if he had not the note. The note neither enlarges-nor diminishes the obligations of the buyer. The introduction of the evidence to which reference has been made, for *203 the purpose of explaining what was intended by the words “security for the payments made by notes,” seems to be justified by the rule which prevails in reference to the admission of parol evidence in relation to written contracts (see G-reenleaf on Evidence, vol. • 1, 12th ed. § 282), and which seems to have influenced the learned referee to the admission and consideration of the evidence. It is there said: “It is also to be kept in mind that though the first question in all cases of contract is one of interpretation and intention, yet the question as we have already remarked is not what the parties may have secretly and in fact intended, but what meaning did they intend to convey by the words they employed in the written instrument. To ascertain the meaning of these words it is obvious that patrol evidence of extraneous facts and circumstances may in some cases be admitted to a very great extent without in any wise infringing the spirit of the rule under consideration.”
And this seems to be illustrated by the case of Hineman v. Rossenback (39 N. Y., 98), in which the agreement provided for the payment of $1,700 in lawful currency of the United States and $500 on an order upon Woodruff & Taylor. And the court sustained the admission of evidence to show that the order was to be for sash and blinds and not money.
It cannot be said that the cases are uniform on the subject of the admission of parol evidence, even for explanatory purposes, and a consideration of them renders it difficult to, formulate any general order; but, as indicated by the authorities just referred to, if the evidence is explanatory only, and the contract, by the use of peculiar terms or from its peculiar phraseology, justifies resort to explanatory evidence, it should be received. The construction of the contract in favor of the plaintiff by the referee, as already indicated, and by which it was declared that it was entitled to security other than the notes themselves, must be adopted as the correct one, and the objection to the parol evidence, already considered, deemed of no value.
The defendant suggests, in addition to these points, that the plaintiff having accepted the notes without security, waived the requirement in that regard, assuming that it was entitled to it under the terms of the agreement. The case of Smith, v. Lines (5 N. Y., 44), in which the question was well considered, decides this proposition, namely, that by absolute delivery, without exacting the performance of the condition, the vendor is presumed to have abandoned the security he had provided for the payment of the purchase-money, and to have elected to trust to the personal security of the vendee. But in the same case it is stated, and it must be very obvious, that whether the delivery is absolute or conditional, must depend upon the intention of *204 the parties at the time the goods were delivered—a question necessarily for the jury to consider and pass upon. In this case the referee, by the thirteenth finding of fact, determined by the acceptance of new notes for each ascertained balance of account, and which was for the accommodation of Tousey, the parties did not intend thereby to modify in any respect the terms of the contract in reference to the presses in suit, beyond extending the time for payment.
The case itself furnishes abundant evidence to show that there was no intention to abandon the right which the failure to give security had given, on default, in the payment of the sum that might become due. Mr. Brower, for example, said that when the extension was applied for Mr. Tousey complained that the six months he requested might go by and the company compelled to take out their machines, and he was told that if he could not pay the $250 a week the company was prepared to take out the presses. And this, of course, was after the delivery and use of them by Tousey, and is referred to as illustrative of the fact that the right to take, the presses had not been abandoned, and that there was no absolute unconditional delivery of them at the time of the sale.
It seems to follow from these facts and legal conclusions that even if the explanatory evidence as to the contract were improperly received, it did not prejudice the defendant, for two reasons, one of which is that the interpretation of the contract itself is such as the explanatory evidence would indicate it ought to be; and, secondly, because subsequent events, to which reference has been made, show that there was no absolute unconditional delivery of the presses, and the right to take them in case of default in payment insisted upon and preserved]
We think the learned referee was right in his conclusions of fact and law, and that the judgment appealed from should be affirmed.
Daniels, J., concurs.