(19 Misc. Rep. 282.)

## ASHNER v. ABENHEIM et al.

(Supreme Court, Trial Term, New York County. December, 1896.)

1. SALES—REMEDIES OF BUYER—OVERPAYMENT.

A bought note recited a sale of tobacco to be delivered, "duty cash," at a certain price, and stated that the duty was 45 cents a pound. The duty was in fact only 35 cents a pound. The buyer had refused to make the purchase until the duty was ascertained and made a part of the contract, and the books and correspondence of the parties showed that, in the sale, the duty was separated from the price of the goods. *Held*, that the buyer could recover from the seller the 10 cents per pound in excess of the real duty which he had paid.

2. FRAUD—LIABILITY FOR FALSE REPRESENTATIONS.

A party to a contract, who refers the other party to a third person for information about a matter which is inserted in the contract, is liable for such person's fraud in giving false information.

3. PRINCIPAL AND AGENT—UNDISCLOSED PRINCIPAL—LIABILITY OF AGENT.

One who makes a contract in his own name, without disclosing that he acts as agent for another, is liable as principal.

Action by Sigmund Ashner against Max Abenheim and others to recover money obtained from plaintiff by defendants through misrepresentation.

The plaintiff purchased from the defendants 26 bales of Sumatra tobacco through a broker, and received from the latter a bought note, which reads as follows:

"New York, June 9, 1890.

"Mr. S. Ashner, 15½ Bowery, bought of M. Abenheim & Co., 2 and 4 Stone street, twenty-six bales Sumatra tobacco, Deli Poewa, Bl., as per annexed return, Nos. 1,148.52, 1,154.74; net, 45,460, at $1.40,—$6,364.40. Terms: The goods are to be delivered, duty cash, not less than five bales at a time. Any amount of goods over five bales delivered between date of bill and sixty days thereof, is to be discounted at the rate of 6 per cent. per annum on a four months' basis. For amount of goods remaining in bond at the expiration of sixty days, a four months' note is to be given for the bonded amount, but whenever more than five bales have been delivered such excess is to be discounted at 6 per cent. per annum for unexpired time of note. The duty on such amount of goods remaining in bond must be paid whenever a change in the tariff necessitates it. The duty is 45 cents per pound."

The plaintiff paid the purchase price and received the tobacco, but, having subsequently ascertained that the duty was 35 cents, instead of 45, as stated in the note, and paid to the defendants, brought this action to recover the difference of 10 cents per pound, as so much money had and received by defendants through misrepresentation.

John Fennel, for plaintiff.
B. F. Einstein, for defendants.

McADAM, J. On the first trial, at the close of the plaintiff's case, the justice then presiding dismissed the complaint, and, on appeal to the general term, the judgment was reversed, and a new trial ordered. 83 Hun, 34, 31 N. Y. Supp. 514. In the opinion of the general term (by which this trial must be controlled) is the following reference to the contract in question:

"If it was one wherein, as contended by defendants, the plaintiff agreed to purchase so many pounds of tobacco at $1.40 a pound, then it would make no difference whether the duty was 35 or 45 cents per pound. Or, as expressed in the trade language, if the price at which the plaintiff bought the tobacco was the 'long price' (that is, inclusive of the duty), and not at the 'short price' (which is exclusive of the duty), then the plaintiff could not recover back the difference in duty paid. If this construction of the contract were to prevail, then the effort to recover the difference of 10 cents could not be successful, because any representation made for the purpose of inducing the plaintiff to enter into such an agreement would be one relating to the value of the tobacco, or a misrepresentation as to the law,—upon neither of which grounds could the plaintiff recover for the reasons already given. And it was by confining its attention to this as the only construction to be given to the contract that the court was led into the error of dismissing the complaint. If, on the other hand, the contract was one by which the plaintiff agreed to purchase the tobacco at a certain sum per pound, and, in addition thereto, to pay whatever might be the duty, and, for the purpose of fixing in the contract what the understanding of the parties was ·as to the duty, it was, as the effect of a representation made by defendants, placed at 45 cents per pound, and thereafter the defendants paid only 35 cents, they would not be justified in retaining the 45 cents which they received from the plaintiff."

Upon the present trial evidence was given by both sides, and it is clearly established thereby that the goods had been appraised and the duty actually fixed at 35 cents per pound long before the bought and sold notes were made; that the plaintiff refused to make the purchase until the broker first ascertained and put in the bought and sold notes the rate of duty; that the broker thereupon went to the defendants to ascertain the precise amount, and was referred by them to Mr. Hamburger for the information, and the latter said the duty was 45 cents, whereupon the broker inserted in the notes a statement to that effect, upon the faith of which the purchase was completed. The defendants, having referred the broker seeking information to Hamburger, are bound by his statement. Mook v. Parke, 9 Misc. Rep. 90, 29 N. Y. Supp. 32; Benesch v. Insurance Co. (Com. Pl.) 11 N. Y. Supp. 714; Wehle v. Spellman, 1 Hun, 634, cited with approval in Lambert v. People, 76 N. Y., at page 229; Volkman v. Feldmann, 42 N. Y. Super. Ct. 44.

The plaintiff, by his conduct, treated the rate of duty as a circumstance material to the contract, for he refused to consummate the purchase until it was not only ascertained, but made one of the terms of the contract, and of this the defendants were aware. That the fact was material is also shown by the manner in which customhouse appraisements are made. The law then fixed the duty upon importations of tobacco, depending upon kind and quality, at 35 and 75 cents per pound, but the manner of appraising the merchandise was left to the customhouse officials, acting under instructions from the secretary of the treasury. It appears, from the evidence of the customs officials, that the rate under the then existing tariff

regulations was determined by taking "ten hands" from an average number of bales, this being found to represent the make-up of the bale as near as the human eye can detect. If, upon such examination, it appeared that the bales on the particular shipment contained less than 100 leaves to the pound, the lot was appraised at 35 cents per pound. If the bales contained 100 leaves or more to the pound, the rate was fixed at 75 cents per pound, because such tobacco was supposed to be of the finest grade. Sometimes two grades of tobacco were contained in the same bale, in which case, if 50 per cent. was of the 75 cent grade, and 50 was of the 35 cent grade, the duty imposed was one-half of the total of 75 and 35,—that is, 55 cents per pound; and in this manner the government collected the duty according to the statutory rate. The amount varied in these proportions, but in the end the legal charge only was exacted. The evidence sufficiently shows that merchants dealt with reference to this mode of appraisement, and based their estimate of value to an extent on the amount of duty imposed. It is apparent, therefore, that the effect of calling the duty 45 cents, instead of 35, was to induce the belief that tobacco on which 45 cents duty was imposed was superior to that on which a lesser sum was paid, and the purchaser was naturally led to act on the belief that he was getting better tobacco than that on which a lesser rate was imposed. The plaintiff evidently so acted in making the purchase, and for that reason insisted that the fact that 45 cents duty had been paid must be inserted in the contract, and made the basis thereof.

A significant feature is that the books of the parties, and their correspondence and writings, all evidence a sale in which the duty was separated from the price of the goods, thus furnishing the strongest kind of testimony as to the construction which they themselves had placed upon the contract. The proofs also show that Hamburger, the person to whom the defendants referred the broker, knew that the duty imposed was 35 cents, despite which he made the misrepresentation which entered into the contract. When the tobacco was examined by the plaintiff, after having been taken from bond, it was discovered to be exclusively 35-cent material.

The defendants, in defense, attempted to show that the purchase was made at the "long" price, and that it was therefore immaterial to the plaintiff what the duty was. While the evidence gives color to the contention, the acts of the parties demonstrate that, while a "long" price was fixed, the basis and inducing cause of the contract was the amount of duty actually imposed; so that, for all practical purposes, the transaction must be treated as if the sale had been made at the "short" price.

The defendants went further, and attempted to prove a custom of the trade by which the amount of duty might be arbitrarily fixed by the vendor, as, when a "long" price is fixed, it makes no practical difference to the buyer, except as to the amount of ready cash which he has to pay, and this because the duty has to be paid before the goods are taken from bond. But this custom is appli-

cable only where a "long" price has been fixed, and the buyer in the end is simply called upon to pay the sum agreed upon. It might be applied to purchases of goods unappraised, and on which the duty has not been fixed, or where the vendee is indifferent as to the amount; in which case the parties may arbitrarily determine in advance upon an agreed rate of duty that the contract may go through. Such a custom might be good, for it would leave open only the question of how much of the duty the vendor must pay if the duty exceeded the rate designated. But it cannot be applied here, for the usage, to be legal, must be reasonable; that is, not unreasonable nor inconsistent with the terms of the contract actually made. Walls v. Bailey, 49 N. Y. 464; Collender v. Dinsmore, 55 N. Y. 200; Lawrence v. Maxwell, 53 N. Y. 21; Lawson, Usages, 369; 2 Pars. Cont. 542, 547; Silberman v. Clark, 96 N. Y. 524; Bigelow v. Legg, 102 N. Y. 652, 6 N. E. 107; Hopper v. Sage, 112 N. Y. 535, 20 N. E. 350; Connell v. Averill, 8 App. Div., at page 528, 40 N. Y. Supp. 857; 6 Wait, Act. & Def. 622, 624; 2 Whart. Ev. § 961; 1 Bl. Comm. 76; Barnard v. Kellogg, 10 Wall. 383; Partridge v. Insurance Co., 15 Wall. 573.

The term "duty," in the sense used in the bought and sold notes, had but one meaning, and refers unmistakably to the custom or import charges imposed by the government under the tariff upon the importation of the tobacco. The tax was 35 cents, and the statement that it was 45 was known by Hamburger to be untrue. The defendants adopted the representation when their broker inserted it in their contract, and they, as a consequence, are legally liable for the fraud. When an act of parliament has given a definite meaning to any particular word denoting quantity, it must be understood to have been used with that meaning, and no evidence of custom will be admissible to attribute any other to it. Smith v. Wilson, 3 Barn. & Adol., at page 731; Hockin v. Cooke, 4 Term R. 314; Master, etc., v. De Walden, 6 Term R. 338; Hinnemann v. Rosenback, 39 N. Y. 98. Thus, a custom that every pound of butter sold in a particular market town shall weigh 18 ounces is bad (Noble v. Durell, 3 Term R. 271), or a usage requiring 2,240 pounds as a ton, when the statute provides that 2,000 pounds shall constitute a ton, and the contract does not otherwise provide (Evans v. Myers, 25 Pa. St. 114; Green v. Moffett, 22 Mo. 529), because they are opposed to the policy of the law, as tending to unsettle uniform rules established for the protection of the commercial world; which yield only to the terms of contracts expressly calling for a different construction.

It cannot be claimed that the misrepresentation related to a matter of law, respecting which the plaintiff was chargeable with knowledge; for, though he may have known that the legal rate of duty was from 35 to 75 cents, he may still have known the regulation as to grading the rates, depending upon the quality of the goods, and that by reason of such grading the rate might really have been fixed at 45 cents, the sum stated in the contract to have been paid. Besides, all the cases which deny a remedy for mere mistake of law

on one side are careful to add the qualification that there must be no improper conduct on the other. Haviland v. Willets, 141 N. Y., at page 50, 35 N. E. 960.

The defendants also claim that they acted only as agents for Hamburger, receiving for their services 1 per cent: commission on $6,300, the amount of the purchase, and that their principal got the benefit of the entire transaction less their commission. Therefore the action should be against him. Hamburger testifies that he had reasons for not being known in the transaction, and on that account employed the defendants to act for him. That they acted as principals is clear. They never disclosed that they acted for Hamburger. Indeed, the reasons he gave for employing them are substantial reasons why they should not have disclosed him as principal; and it is elementary that to relieve a party from the effect of a contract made by him, he must disclose the fact that he is acting only as agent, that the vendee may determine whether he will accept the responsibility of the principal in the transaction (Cobb v. Knapp, 71 N. Y. 348; Argersinger v. MacNaughton, 114 N. Y. 535, 21 N. E. 1022; Fairchild v. McMahon, 139 N. Y. 298, 34 N. E. 779; Mahoney v. Kent, 7 Misc. Rep. 726, 28 N. Y. Supp. 19; Kahn v. Weill, 9 Misc. Rep. 150, 29 N. Y. Supp. 53; Whitman v. Johnson, 10 Misc. Rep. 725, 31 N. Y. Supp. 805; Forster v. Wilshausen, 14 Misc. Rep. 520, 35 N. Y. Supp. 1083; Trankla v. McLean, 18 Misc. Rep. 221, 41 N. Y. Supp. 385), because "a person contracting as agent will be personally responsible, where, at the time of making the contract, he does not disclose the fact of his agency, but he treats with the other party as being himself the principal, for in such a case it follows, irresistibly, that credit is given to him on account of the contract" (Story, Ag. § 266).

It follows that the 10 cents per pound wrongfully exacted from the plaintiff must be regarded as so much money equitably belonging to him, which, ex æquo et bono, he is entitled to recover. Roberts v. Ely, 113 N. Y. 128, 20 N. E. 606; Chapman v. Forbes, 123 N. Y. 532, 26 N. E. 3.

Judgment for plaintiff for $622.75, being the amount claimed, with interest.